2005 ME 77

**John J. DESJARDINS**

v.

**Mary M. DESJARDINS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 17, 2005.

Decided: June 23, 2005.

Theodore M. Smith, Esq., Smith Law Office LLC, Van Buren, for plaintiff.

Richard L. Currier, Esq., Anthony A. Trask, Esq., Currier & Trask, P.A., Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] John J. Desjardins appeals from an order for a writ of execution entered by the District Court (Madawaska, *Griffiths, A.R.J.*). The order granted Mary M. Desjardins's request for the issuance of a writ of execution in the amount of $7543.75. In a previous order, the court found John in contempt for violating a preliminary injunction and ordered him to jail for ten days as a remedial sanction. The contempt order set $7543.75 as the amount that John could pay to purge the contempt.

John did not pay the amount and spent ten days in jail. He contends that the court had no authority to issue a writ of execution because the contempt order was not a money judgment. We vacate the order as we determine that the court did not grant a judgment for $7543.75 in the contempt order or otherwise, and, therefore, it could not issue a writ of execution for the amount.

## I. BACKGROUND

[¶ 2] John filed a divorce complaint against Mary, and the court issued the preliminary injunction, required by 19-A M.R.S.A. § 903 (1998 & Supp.2004), restraining both parties from selling or disposing of property without the consent of the other party while the divorce proceedings were pending. Mary brought a motion for contempt, seeking remedial sanctions against John for violating the preliminary injunction.

[¶ 3] The court held a hearing on the contempt motion and found that John violated the preliminary injunction by forging Mary's name on a check for insurance proceeds in the amount of $13,287.50, and by selling for $1800, without Mary's knowledge, a horse that the parties had jointly owned. The court found that John was in contempt for violating the injunction. It ordered him to be incarcerated in the county jail for ten days, and it provided that John could purge the contempt by paying Mary $7543.75, which represented Mary's one-half interest in the insurance proceeds and the horse. The contempt order stated that if John paid the sum to Mary within thirty days of the date of the order, the period of incarceration would be suspended.

[¶ 4] Although John filed a notice of appeal from the contempt order, he failed to perfect the appeal, and we granted

Mary's motion to dismiss the appeal. John did not pay Mary, and he served the jail sentence. Shortly after John completed the jail sentence, Mary sent a letter to the court requesting a writ of execution, and John sent a letter opposing the issuance of a writ and requesting a hearing. Two days later, without granting John's request for a hearing, the court ordered the issuance of the writ, and the clerk issued it. John appeals from the order granting the issuance of the writ.

## II. DISCUSSION

[¶ 5] We apply a de novo standard of review to John's contention that the court was without authority to issue the writ of execution because the issue presents a question of law.

[¶ 6] The contempt rule, M.R. Civ. P. 66, classifies the procedure for contempt hearings into three distinct types: (1) summary proceedings for contempt occurring in the presence of the judge in which punitive and remedial sanctions may be imposed summarily, M.R. Civ. P. 66(b); (2) plenary proceedings for contempt occurring either in the presence of the court or outside the presence of the court when punitive sanctions are sought, M.R. Civ. P. 66(c); and (3) plenary proceedings for contempt occurring in the presence of the court or outside the presence of the court when remedial sanctions are sought, M.R. Civ. P. 66(d). Mary's motion for contempt specifically stated it was brought pursuant to

M.R. Civ. P. 66(d), and it sought remedial sanctions for John's contempt.

[¶ 7] The contempt rule also classifies the types of remedial sanctions into three categories: (1) coercive imprisonment, which allows the court to incarcerate the contemnor until the contemnor performs the action ordered by the court, M.R. Civ. P. 66(d)(3)(A); (2) coercive fine, by which the court may fine a contemnor in a specific amount to be paid unless the contemnor performs the ordered action or in a daily sum to be paid each day until the contemnor performs the action, M.R. Civ. P. 66(d)(3)(B); and (3) compensatory fine for any loss or injury caused by the contempt, M.R. Civ. P. 66(d)(3)(C). The compensatory fine provision states that the court may enter judgment "for a sum of money sufficient to indemnify the aggrieved party and to satisfy the costs and disbursements, including reasonable attorney fees, of the aggrieved party." *Id.* The compensatory fine may be imposed in addition to a coercive jail sentence or a coercive fine. *Id.* With respect to any of the remedial sanctions, the rule states: "An order containing a remedial sanction shall contain a clear description of the action that is required for the contemnor to purge the contempt." M.R. Civ. P. 66(d)(3).

[¶ 8] The contempt order in this case imposed the remedial sanction of imprisonment by ordering John to jail for ten days. It also set forth a clear description of what he had to do to purge himself of the contempt: he had to pay Mary $7543.75 within thirty days of the contempt order.[1] The

---

1. Although John has appealed from the order that issued a writ of execution and not the contempt order, we note that the contempt order did not comply with the requirement that a contemnor, who is sanctioned by coercive imprisonment, be given the keys to his freedom. *See Slauenwhite v. Slauenwhite,* 679 A.2d 93, 94 (Me.1996). In *Slauenwhite,* we vacated a contempt order that ordered the contemnor to jail but gave him the ability to

purge as long as he did so before the jail sentence commenced. *Id.* at 94–95. We held that coercive imprisonment could be for an indefinite or a definite period of time, but the order must be clear that throughout the time period of the incarceration, the contemnor could get out of jail by paying the purge amount. *Id.* Here, as in *Slauenwhite,* the order allowed John to purge himself of contempt within thirty days of the contempt or-

contempt order did not specifically provide for a compensatory fine or a judgment "for a sum of money sufficient to indemnify the aggrieved party." M.R. Civ. P. 66(d)(3)(C).

[¶ 9] Writs of execution are issued on final judgments. 14 M.R.S.A. § 4651 (2003). The purpose of a writ of execution is to enforce a monetary judgment. M.R. Civ. P. 69. The court treated the contempt order as a monetary judgment when it ordered that a writ of execution be issued, over the objection of John who asserted that the contempt order was not a judgment and, therefore, the court had no authority to issue the writ.

[¶ 10] Although M.R. Civ. P. 66(d)(3)(C) plainly allows a court to order a judgment as a compensatory fine for the loss or injury caused to a party by the contempt, neither the contemnor nor the other party should have to guess as to whether the contempt order has in fact ordered such a judgment. There is nothing in the rule that suggests that the purge amount is automatically translated to a compensatory fine or judgment. *See Splude v. Dugan,* 2003 ME 88, ¶ 9, 828 A.2d 772, 775–76. Although the contempt order could have contained explicit language ordering a compensatory fine or judgment in favor of Mary and against John, it did not, and therefore, no judgment in the amount of $7543.75 exists. Without a judgment, the court was without the authority to issue a writ of execution.

The entry is:

. Order issuing a writ of execution is vacated.

der but did not give him the ability to purge himself of contempt while in jail. *See id.; see also, Gordon v. Bowden,* 553 A.2d 665, 666 (Me.1989).