2007 ME 78

**Tim DOWLING et al.**

v.

**Richard SALEWSKI.**

Supreme Judicial Court of Maine.

Argued: May 22, 2007.
Decided: June 28, 2007.

Verne E. Paradie Jr., Esq. (orally), Trafton & Matzen, LLP, Auburn, for plaintiff.

Philip P. Mancini, Esq. Nathaniel R. Huckel–Bauer, Esq. (orally), Drummond & Drummond, LLP, Portland, for defendant.

Catherine R. Connors, Esq. (orally), Judith F. Woodbury, Esq., Hallie F. Gilman, Esq., Pierce Atwood, Portland, for amicus curiae Real Estate & Title Section of the Maine State Bar Association.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, SILVER, and MEAD, JJ.

CALKINS, J.

[¶ 1] This case requires us to determine the meaning of the phrase "real estate title opinion" as it is used in the statute of limitations for professional negligence by attorneys. Richard Salewski appeals from a judgment following a jury trial entered in the Superior Court (Knox County, *Wheeler, J.*) granting damages to Tim and Jean Dowling for Salewski's legal malpractice. Specifically, he argues that an oral statement to the Dowlings that their title was "good" or "clear" does not invoke 14 M.R.S. § 753–B(2) (2006), which provides that the limitations period for bringing a malpractice action "starts to run on the date the negligence is discovered" if the negligence is "in the rendering of a real estate title opinion." We agree with Salewski that the applicable statute is 14 M.R.S. § 753–B(1) (2006), which provides that the statute of limitations begins to run from the date of the act or omission giving rise to the claim. Applying section 753–B(1) means that the Dowlings' claim is barred. We vacate the judgment and remand to the Superior Court for the entry of a judgment in favor of Salewski.[1]

## I. BACKGROUND

[¶ 2] This case arises from a transaction in 1998 in which the Dowlings purchased real estate from a seller, who has since died. The purchase and sale contract stated that the sale was for thirty-nine acres of land in St. George. The Dowlings hired a real estate agency to assist them in the negotiation of the contract.[2]

---

1. Salewski raises other issues on appeal including a ruling that granted the Dowlings' motion to amend their complaint and jury instructions on damages. Because we rule in Salewski's favor on the statute of limitations issue, we do not address his other arguments.

2. The Dowlings named the real estate agency as a defendant in the action, but the court

[¶ 3] The closing took place on March 30, 1998. The Dowlings' lending bank hired Salewski to act as a settlement agent. A disputed fact at trial was whether Salewski also represented the Dowlings at the closing, and the jury found that he represented them. Salewski has not appealed the jury's finding that he represented the Dowlings at the closing.

[¶ 4] The Dowlings did not purchase title insurance, and they did not have the property surveyed prior to the closing. The deed presented at the closing, which was drafted by the seller's attorney, was for a ten-acre parcel of property. Tim Dowling's trial testimony was that at the closing Salewski asked the Dowlings if they wanted title insurance. According to Tim Dowling, Salewski told the Dowlings that they had "clear" title, but because something could go wrong, they might want insurance. Jean Dowling testified that Salewski said they had "clear or good" title and that it was up to them if they wanted insurance. Tim Dowling testified that when he saw the ten-acre deed at the closing, he asked Salewski why it did not refer to thirty-nine acres. He testified that Salewski said there were other deeds that would be sent in the mail to him. Both Dowlings testified that they would not have gone forward with the closing if they thought they were buying only ten acres.

[¶ 5] Two days after the closing Salewski sent a letter to the Dowlings saying that it had been a pleasure to serve them. Several months later Salewski sent a deed to the Dowlings. Tim Dowling looked at it quickly and assumed that it was a correct deed conveying thirty-nine acres.

[¶ 6] The Dowlings did not discover that they owned only ten acres until late 2003 when they had the property surveyed in anticipation of subdividing it. When the

Dowlings learned that they owned only ten acres, they contacted Salewski. By then, the seller had conveyed two parcels of adjoining land totaling about twenty-nine acres to two other buyers. Salewski assisted the Dowlings in purchasing one of these parcels, but they were unsuccessful in their attempt to purchase the other parcel.

[¶ 7] The Dowlings filed a complaint for legal malpractice against Salewski on December 17, 2004, more than six years after the March 30, 1998, closing. The complaint set forth several claims against Salewski. Salewski brought a motion for summary judgment, and the court granted judgment in his favor on all claims except negligence and breach of fiduciary duty. The court concluded that "[b]ecause there is a genuine issue of material fact whether Salewski performed legal services for the Dowlings, and if so, whether those legal services included a title search, this court cannot determine which statute of limitations should be applied in this case."

[¶ 8] The matter proceeded to a jury trial. At the close of the Dowlings' case in chief, Salewski moved for judgment as a matter of law on the breach of fiduciary duty claim, which the court granted. He also moved for judgment as a matter of law on the negligence claim on the ground that the action had not been brought within the statute of limitations, and that there is no such thing as an oral title opinion. The court denied the motion as to the negligence claim, and Salewski presented his evidence. At the close of the evidence, Salewski renewed his motion for judgment as a matter of law, and it was denied.

[¶ 9] The jury answered the special verdict form finding that Salewski professionally represented the Dowlings at the real estate closing; that he committed profes-

granted summary judgment to the agency.

sional negligence by giving an erroneous title opinion to the Dowlings; that the Dowlings could not have reasonably discovered the professional negligence before December 1998; that the erroneous title opinion was a proximate cause of the Dowlings' alleged damages; that the Dowlings' total damages were $75,000; and that it was just and equitable to reduce the damages by $30,000 because of the Dowlings' negligence. The jury returned a verdict for the Dowlings for $45,000.

## II. DISCUSSION

[¶ 10] This appeal requires us to interpret the statute of limitations, 14 M.R.S. § 753–B(2). We review the interpretation and application of a statute de novo. *White v. McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A.*, 2002 ME 160, ¶ 6, 809 A.2d 622, 623. "The primary goal of statutory interpretation is to give effect to the intention of the Legislature." *Yeadon Fabric Domes, Inc. v. Me. Sports Complex, LLC*, 2006 ME 85, ¶ 13, 901 A.2d 200, 205.

[¶ 11] Statutes of limitation are strictly construed. *See White*, 2002 ME 160, ¶ 8, 809 A.2d at 624. Their purpose is "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims." *Langevin v. City of Biddeford*, 481 A.2d 495, 498 (Me.1984).

[¶ 12] The statute of limitations for civil actions is six years, 14 M.R.S. § 752 (2006), unless another statute provides otherwise. For legal malpractice actions, "the statute of limitations starts to run from the date of the act or omission giving rise to the injury, not from the discovery of the malpractice, negligence or breach of contract." 14 M.R.S. § 753–B(1). However, in actions "alleging professional negligence in the rendering of a real estate title opinion," the statute "starts to run on the date the negligence is discovered." 14 M.R.S. § 753–B(2).

[¶ 13] The Dowlings claim that Salewski was negligent at the real estate closing in leading them to believe that thirty-nine acres was being conveyed to them, or in not telling them that only ten acres was being conveyed. This is an act or omission that occurred at the 1998 closing. The complaint was brought more than six years after the closing. Therefore, unless section 753–B(2) applies, Salewski was entitled to judgment.

[¶ 14] Section 753–B(2) applies in this case only if Salewski rendered a "real estate title opinion." The meaning of that phrase is the key to deciding which statute of limitations applies.

[¶ 15] We are required to utilize the rules of statutory construction codified by the Legislature in title 1: "The following rules shall be observed in the construction of statutes relating to words and phrases, unless such construction is inconsistent with the plain meaning of the enactment, the context otherwise requires or definitions otherwise provide." 1 M.R.S. § 72 (2006). There is no statutory definition of "real estate title opinion." However, a general rule contained within section 72 states: "Words and phrases shall be construed according to the common meaning of the language. Technical words and phrases and such as have a peculiar meaning convey such technical or peculiar meaning." 1 M.R.S. § 72(3).

[¶ 16] "Real estate title opinion" has a peculiar meaning in the world of people who give title opinions. A person who examines a title, that is, performs a title search, is often requested to give a letter of opinion or a "certificate of title." PAUL G. CRETEAU, PRINCIPLES OF REAL ESTATE LAW 270 (1977). "A certificate of title is simply the examiner's opinion of the title based upon his search and exami-

nation of the public records." *Id.; see also* PAUL G. CRETEAU, MAINE REAL ESTATE LAW 279 (1969); PAUL G. CRETEAU, MAINE SUPPLEMENT TO PRINCIPLES OF REAL ESTATE LAW 12–1 (1978) [hereinafter CRETEAU, PRINCIPLES]. Title standards, such as those adopted by the Maine State Bar Association, generally guide title searches. CRETEAU, PRINCIPLES *supra*, at 12–6; *see generally* MAINE STATE BAR ASSOCIATION, STANDARDS OF TITLE (2007). Although the Maine State Title Standards no longer contain an appendix of forms, an earlier version of the standards included a sample real estate title opinion form and a notation that it should be in the form of a letter to the client. MAINE STATE BAR ASSOCIATION, STANDARDS OF TITLE 68 (1976).

[¶ 17] The Legislature was well aware of the nature of real estate title opinions and knew that the phrase has a distinctive meaning. Because "real estate title opinion" is a technical phrase with a peculiar meaning, when it is used in a statute it must be given that meaning. "Real estate title opinion" refers to a written opinion of the status of title of a partic-ular parcel of real estate based on an examination of that title.

[¶ 18] There is no evidence in this case that Salewski rendered a "real estate title opinion" to the Dowlings. The evidence is that he told the Dowlings that their title was "good" or "clear." He provided nothing to them in writing about the status of title. Because he did not render a "real estate title opinion," the Dowlings had to make their professional negligence claim against Salewski within the six-year limitations period of section 753–B(1), which starts the running of the six years on the date of the negligent act. The negligent act was alleged to have occurred at the closing, more than six years before the Dowlings brought their claim. Therefore, Salewski is entitled to judgment as a matter of law.

The entry is:

Judgment vacated. Case remanded for the entry of judgment for the Richard Salewski.