2008 ME 145

**Merrill A. EFSTATHIOU**

v.

**THE ASPINQUID, INC., et al.**

**The Aspinquid, Inc.**

v.

**Merrill A. Efstathiou**

**Merrill A. Efstathiou**

v.

**Dennis A. Efstathiou.**

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2008.
Decided: Sept. 23, 2008.

Michael J. Donlan, Esq. (orally), Verrill Dana, LLP, Kennebunk, ME, for Merrill Andrews Efstathiou.

Ronald P. Lebel, Esq. (orally), Marc N. Frenette, Esq., Skelton, Taintor & Abbott,

Auburn, ME, for Dennis Andrews Efstathiou.

Russell B. Pierce, Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for The Aspinquid, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] In this opinion, we consider appeals from three separate judgments in cases involving related parties: Merrill A. Efstathiou, Dennis A. Efstathiou, and Dennis Efstathiou's family business, The Aspinquid, Inc. All three appeals result from the dissolution of Dennis and Merrill's marriage and involve, among other things, disputes over the ownership and possession of real property in Ogunquit, known as Beachcrest.

[¶ 2] In the first matter, Merrill appeals, and Aspinquid and Dennis cross-appeal, from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*), in favor of Dennis and Aspinquid on Merrill's complaint to quiet title to Beachcrest. We affirm that judgment.

[¶ 3] Merrill filed the second appeal from the Superior Court's (York County, *Fritzsche, J.*) denial of her motion to dismiss Aspinquid's later and separate complaint, also related to Beachcrest, in which Aspinquid alleged Merrill's trespass to land, wrongful interference/private nuisance, and slander of title. Merrill also appeals from the court's approval of attachment and trustee process in the same proceeding. We conclude that Aspinquid was required to present the complaint as a

compulsory counterclaim to Merrill's original quiet title action. Therefore, Aspinquid's later, independent filing of the complaint is barred. We vacate the denial of the motion to dismiss and remand for dismissal of all three counts, and we vacate the order of attachment.

[¶ 4] The third matter is Dennis's appeal and Merrill's cross-appeal from the judgment entered in Merrill and Dennis's divorce proceeding in the District Court (York, *Westcott, A.R.J.*). We correct a technical error in the child support provision of the judgment and otherwise affirm that judgment.

## I. DISCUSSION

[¶ 5] After nearly twenty-four years of marriage and decades of working together in the family businesses, Merrill and Dennis Efstathiou moved toward divorce in the summer of 2004. Almost immediately, they became embroiled in a litigious conflict that included the attempted eviction of Merrill and the parties' then twelve-year-old daughter from the house that the parties had shared for close to twenty years, at least two civil suits regarding that home, and a protracted divorce proceeding.[1] We address the two actions regarding the Beachcrest property, after which we address the parties' divorce.

### A. The Beachcrest Actions

#### 1. History of Ownership and Litigation

[¶ 6] Merrill and Dennis were married on November 29, 1980. Six years later, in April 1986, they bought property in Ogunquit known as Beachcrest. The property, purchased for operation as a bed and

---

1. Despite a regional system of court scheduling, neither party sought a special assignment to one trial judge to consolidate or manage the proceedings. At least six different judges and magistrates entered orders in the divorce matter before it was concluded. The extent of the paper filings, hearing days, and procedural or minor disputes that have delayed the resolution of these proceedings do not stand as a model of legal practice.

breakfast and restaurant, almost immediately became a financial strain on Dennis and Merrill, failing to generate a positive cash flow in its first season. Merrill and Dennis transferred Beachcrest to Aspinquid, a corporation owned and operated by Dennis's family, on December 31, 1986, with Aspinquid assuming responsibility for the mortgages and Beachcrest-related debts. Thereafter, Aspinquid paid the debts on and held title to Beachcrest while Merrill and Dennis, who continued to live there, operated a restaurant and a bed and breakfast at Beachcrest. Eventually, Beachcrest ceased to operate as a restaurant or bed and breakfast and became the family home of Dennis, Merrill, and their three children. Merrill was aware that they had transferred title to the property throughout that time.

[¶ 7] In July 2004, while she and her daughter were still residing at Beachcrest, Merrill filed for divorce in the District Court. Shortly thereafter, Aspinquid, acting through Dennis's brother, served a notice to quit on Merrill and, in October 2004, commenced a forcible entry and detainer action in the District Court to compel her to move from Beachcrest. Initially, the forcible entry and detainer action was dismissed without prejudice for failure to comply with notice requirements, but Aspinquid served a proper notice to quit on December 16, 2004, and filed another complaint for forcible entry and detainer on January 27, 2005.

[¶ 8] In response, in April 2005, Merrill filed a quiet title action in the Superior Court against Aspinquid, Dennis, and Dennis's brother, John Andrews Efstathiou, asserting that she held a property interest in Beachcrest and that Aspinquid held title to Beachcrest only because of Dennis's fraudulent conduct.

[¶ 9] Months later, in December 2005, Aspinquid moved for leave to amend its answer to assert a counterclaim for trespass to land, wrongful interference/private nuisance, and slander of title, all related to the Beachcrest property. In January 2006, the court denied the late filed request. The following month, Aspinquid filed a separate action in the Superior Court raising the same claims for trespass, wrongful interference/private nuisance, and slander of title against Merrill. The court declined to dismiss that action, and allowed an attachment and trustee process against Merrill.

2. Merrill's Quiet Title Action

[¶ 10] We begin by addressing Merrill's quiet title complaint, in which she claimed that Dennis defrauded her of her interest in the Beachcrest because, in 1986, he said that the transfer was "just on paper" and they would eventually get the property back. Alleging that Dennis acted both "individually and in his capacity as President of the Aspinquid, Inc.," she claimed that he had abused her trust and "refused to discuss the family finances with [her]," causing her "substantial damage." Specifically, she alleged that Dennis had committed fraud and constructive fraud by inducing her to transfer Beachcrest to Aspinquid. Merrill sought to quiet title, to obtain a declaratory judgment that she and Dennis are the fee simple absolute owners of Beachcrest, and to receive punitive damages. In the alternative, she alleged theories of promissory estoppel and equitable estoppel. The court dismissed Merrill's promissory estoppel and equitable estoppel claims. We find no error in that ruling and do not discuss those claims further.

[¶ 11] The court eventually entered a summary judgment for Aspinquid and Dennis on all remaining claims in the quiet title action, concluding that the suit was barred by the statute of limitations and the

doctrine of laches. The court declined to reach Aspinquid's additional argument that the statute of frauds barred Merrill's claims. Shortly after the court's decision, the parties settled the forcible entry and detainer action, with Merrill agreeing to move out of Beachcrest by the end of October 2006.

[¶ 12] Before us, Merrill argues that (1) neither the statute of limitations, the doctrine of laches, nor the statute of frauds bars her claims; (2) there is a genuine issue of material fact regarding her exercise of due diligence to discover her claims; and (3) she alleged and provided evidentiary support for each element of her fraud claim, including the required elements—pecuniary loss and false representation.

[¶ 13] We review the grant of a motion for summary judgment de novo. *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. We consider the evidence in the light most favorable to the party against whom summary judgment was entered to determine if a genuine issue of material fact exists. *Id.* "A genuine issue of material fact exists when there is sufficient evidence to require a factfinder to choose between competing versions of the truth at trial." *Id.*

[¶ 14] Whether a claim is barred by the statute of limitations is a question of law. *Francis v. Stinson*, 2000 ME 173, ¶ 56, 760 A.2d 209, 220. Generally, a civil action must be commenced within six years after the cause of action accrues. 14 M.R.S. § 752 (2007).[2] Merrill failed to file her quiet title action within six years after the transfer, and that action is therefore barred.

[¶ 15] Merrill argues, however, that her action for fraud accrued later and that she brought that claim within six years after it accrued. Fraud occurs when a defendant

(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

*St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995, 1003 (quotation marks omitted). To state a claim of constructive fraud, a plaintiff must allege a transfer of property "to the grantee, who promises or agrees to hold the property for the benefit of the [plaintiff], ... and the [plaintiff] is induced to act through reliance on a relationship of trust which may be founded on moral, social, or personal, as well as legal duties." *Baizley v. Baizley*, 1999 ME 115, ¶ 7, 734 A.2d 1117, 1119 (quotation marks omitted).

[¶ 16] Considering the facts in the light most favorable to Merrill, her fraud and constructive fraud claims accrued on December 31, 1986, when Merrill transferred Beachcrest to Aspinquid in reliance on Dennis's statements that the transfer was "just on paper" and Beachcrest would be returned to them. All of the elements of her fraud claim were present on that date. All of the elements of her *constructive* fraud claim were also present on December 31, 1986. Merrill was aware for years after that date that she and Dennis had deeded the property to Aspinquid,

2. Title 14 M.R.S. § 752 (2007) states:
   All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specially provided.

which had assumed all debts on it; that Beachcrest had not been transferred back to her and Dennis; and that no specific plan was in place to do so. Accordingly, her claims of fraud had to have been filed within six years of the act of fraud, that is, December 31, 1986. They were not filed until 2004, and the court did not err in entering judgment in favor of Aspinquid on her claims of fraud and constructive fraud.

[¶ 17] Merrill also appears to argue that Dennis and Aspinquid fraudulently *concealed* their wrongful actions. If a claim is fraudulently concealed from the potential plaintiff, then the six-year statute of limitations begins to run when the potential plaintiff discovers that she has a cause of action or when she *should have* discovered it in the exercise of due diligence and ordinary prudence. 14 M.R.S. § 859 (2007);[3] *Kobritz v. Severance,* 2007 ME 3, ¶ 13, 912 A.2d 1237, 1241.

■ [¶ 18] There is nothing in this record, however, that would support a finding of fraudulent concealment. Although Merrill asserts that Dennis kept her from learning of the family finances, there is simply nothing in the record to suggest that she was unaware of the pertinent facts—that she had signed away her interest in Beachcrest; that Aspinquid, not she and Dennis, held title to Beachcrest; or that Aspinquid had failed to return Beachcrest to her and Dennis. Accordingly, the court correctly concluded that Merrill failed to establish a genuine issue of material fact regarding fraudulent concealment, and the fraud claim was therefore barred by the statute of limitations. We affirm

the entry of summary judgment, and we do not reach the parties' arguments regarding alternative grounds for summary judgment.

3. Aspinquid's Counterclaim and Independent Action for Trespass, Wrongful Interference/Private Nuisance, and Slander of Title

[¶ 19] After the court denied Aspinquid's motion for leave to amend its answer to Merrill's quiet title action to assert counterclaims for trespass, wrongful interference/private nuisance, and slander of title in January 2006, Aspinquid filed an independent action asserting the same claims. Although Merrill moved to dismiss the independent causes of action on the grounds that Aspinquid had waived them and they were barred by the doctrine of law of the case and as compulsory counterclaims, the court denied her motion to dismiss. Aspinquid moved for approval of attachment and trustee process against Merrill's property in the amount of $329,000, claiming twenty-one months of lost rental income at a rate of $12,000 per month, totaling $252,000, and $77,000 in legal fees and costs paid to clear the cloud on title that Merrill's quiet title action created.

[¶ 20] Aspinquid then moved for summary judgment on all three counts, and Merrill filed a second motion to dismiss. After a hearing on all outstanding motions, the court denied Merrill's motion to dismiss, granted Aspinquid's motion for approval of attachment and trustee process for $100,000, and stayed proceedings on the motion for summary judgment pending

---

3. Title 14 M.R.S. § 859 (2007) states:
    If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580 [governing fraudulent transfers as defined in sections 3575 and 3576].

our review of the quiet title action and the District Court's decision in the parties' divorce action. Aspinquid appeals from the denial of its original motion for leave to amend its answer in the quiet title action, and Merrill appeals from the denial of her motion to dismiss Aspinquid's separate, independent complaint for trespass, wrongful interference/private nuisance, and slander of title, and from the court's order of attachment.

### a. Denial of Motion for Leave to Amend in the Quiet Title Action

[¶ 21] Aspinquid argues that the Superior Court abused its discretion by denying its motion for leave to amend the pleadings in Merrill's quiet title matter because the claims relate to a continuing tort; they are permissive, not compulsory, counterclaims; and, even if the claims were compulsory, granting leave to amend would not cause unreasonable delay. We review a denial of a motion to amend the pleadings for an abuse of discretion and examine the record before the court at the time the motion was filed. *Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶¶ 7–8, 750 A.2d 558, 560. Generally, a party may amend its pleading before a responsive pleading is served or, if no responsive pleading is required, within twenty days after service. M.R. Civ. P. 15(a). A party may also amend a pleading "by leave of court," and "leave shall be freely given when justice so requires." M.R. Civ. P. 15(a). "A party seeking to overturn the denial of a motion to amend must demonstrate (1) that the court clearly and manifestly abused its discretion and (2) that the amendment is necessary to prevent injustice." *Bahre*, 2000 ME 75, ¶ 7, 750 A.2d at 560.

[¶ 22] The Maine Rules of Civil Procedure require the assertion as a counterclaim of any claim "aris[ing] out of the transaction or occurrence" set forth in the complaint. M.R. Civ. P. 13(a)(1). Aspinquid did not bring its counterclaims until roughly five months after Merrill filed her amended complaint to quiet title and more than a year after it filed its first forcible entry and detainer action against Merrill. Although the intent of Rule 13(a) is not to bar legitimate claims, Aspinquid has not shown an abuse of discretion or a reason that the amendment was necessary to prevent injustice because it provided no reasonable excuse for its delay. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* 13.8, at 278 (2d ed. 1970). We discern no abuse of discretion in the court's denial of Aspinquid's late motion to amend its pleadings to assert counterclaims, and we therefore affirm that denial.

### b. Denial of Merrill's Motion to Dismiss Aspinquid's Independent Claims

[¶ 23] We turn then to the court's denial of Merrill's motion to dismiss the same claims when Aspinquid later asserted them in a separate complaint. The denial of a motion to dismiss is not a final judgment, and ordinarily we would dismiss the appeal from the denial as an interlocutory appeal. *See Fitzgerald v. Bilodeau*, 2006 ME 122, ¶ 5, 908 A.2d 1212, 1213. Because of the exceedingly long history of this litigation, we conclude that in this unusual circumstance, the judicial economy exception to our final judgment rule applies. *See Austin v. Universal Cheerleaders Ass'n*, 2002 ME 174, ¶ 7, 812 A.2d 253, 256 (stating that the judicial economy exception permits appeals of nonfinal orders when (1) appellate review provides "final, or practically final, disposition of the entire litigation," and (2) the interests of justice require immediate review (quotation marks omitted)). We therefore address the appeal.

[¶ 24] The question presented is whether the claims were compulsory counterclaims in the original quiet title action. If so, the separate action cannot stand because the court's denial of the motion to amend in that original proceeding, affirmed here, represented a final adjudication of those claims.

[¶ 25] "Under principles usually analogized to *res judicata,* a defendant who fails to interpose a compulsory counterclaim as required by Rule 13(a) is precluded from later maintaining another action on the claim after rendition of judgment." *KeyBank Nat'l Ass'n v. Sargent,* 2000 ME 153, ¶ 17, 758 A.2d 528, 534 (quotation marks omitted). "When the second claim arises out of the *same transaction* as the first, previously-litigated claim, the second claim is barred by M.R. Civ. P. 13(a)(1)." *Id.* (quotation marks omitted).

[¶ 26] Rule 13(a) provides:

**Compulsory Counterclaims.**

(1) *Pleadings.* Unless otherwise specifically provided by statute or unless the relief demanded in the opposing party's claim is for damage arising out of the ownership, maintenance or control of a motor vehicle by the pleader, a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.* But the pleader need not state the claim if (A) at the time the action was commenced the claim was the subject of another pending action, or (B) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(Emphasis added.)

[¶ 27] We determine whether the facts of a controversy constitute a compulsory counterclaim "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *KeyBank Nat'l Ass'n,* 2000 ME 153, ¶ 17, 758 A.2d at 534 (quotation marks omitted); *see Morse Bros., Inc. v. Mason,* 2001 ME 5, ¶¶ 3–5, 764 A.2d 267, 268–69 (barring claims as omitted compulsory counterclaims when the court denied a request to add the counterclaims in the initial action because it was made seven months after the party filed its answer and when both the initial claims and the subsequent claims related to obligations and entitlements arising from membership in and separation from a trust).

[¶ 28] The counterclaims at issue were compulsory. At the heart of each of Aspinquid's claims was a challenge to Merrill's right to be present at and to use the Beachcrest property, which depended on the parties' ownership interests in the property. The quiet title, trespass, wrongful interference/private nuisance, and slander of title claims all turned on the questions of who owned and had the right to possess Beachcrest.

[¶ 29] Because ownership of Beachcrest was at the center of the three original counterclaims alleging Merrill's trespass, wrongful interference/private nuisance, and slander of title regarding Beachcrest, we conclude that Aspinquid's claims were compulsory counterclaims to the quiet title action and that the court should have dismissed the later, separate

action reasserting those claims. We therefore vacate the denial of the motion to dismiss and the order of attachment entered in connection with Aspinquid's separate complaint.

## B. The Divorce

[¶ 30] The parties were married in 1980. They have three children, one of whom—their daughter—is still a minor. Born on March 20, 1992, their daughter was fourteen years old at the time of trial. Merrill was fifty-three years old at the time of trial, and Dennis was forty-eight.

[¶ 31] The parties participated in a five-day trial in December 2006, nearly two and a half years after the complaint was filed. To avoid further delay after the highly contentious trial, the court entered an oral judgment on the record and later completed a thorough written judgment. On appeal, Dennis challenges nearly every financial aspect of the divorce judgment, and Merrill challenges the court's division of property, its decision on attorney fees, and the award of spousal support. Both parties contest the court's retention of jurisdiction pending the outcome of the parties' other appeals. We address many, but not all, of the challenged items.

### 1. Value of Marital Interest in Aspinquid Stock

[¶ 32] Because the parties' primary disputes center around the Efstathiou family businesses and Dennis's ownership in those businesses, we begin there. Each party presented more than one expert on the value of two family businesses: Aspinquid, Inc., which holds title to Beachcrest and in which Dennis has a 26.5% ownership interest, and the Lily Andrews Family Limited Partnership, which holds additional Aspinquid stock and in which Dennis owns a 50% noncontrolling interest. The court found that, through Dennis's combined interests in the two entities, he owned a nonmarital interest of $900,000 to $1,000,000, and a marital interest of $625,000. Because several methods of valuing the property were presented to the court, the court engaged in an analysis that came at the values in several different ways.

[¶ 33] In the end, the court clearly sought to accomplish several reasonable goals. First, although it found that a substantial portion of Dennis's ownership in Aspinquid was marital property, it sought to leave the business entirely with Dennis. That is an appropriate judicial determination. See Doucette v. Washburn, 2001 ME 38, ¶ 28, 766 A.2d 578, 587 (encouraging awards of marital property that allow the parties to separate their financial matters permanently). Second, it sought to assure that Merrill received a payment representing her share of the increase in value of Aspinquid that resulted from the investment of marital efforts. Thus, it ordered Dennis to make a payment to Merrill that was intended to reflect Dennis's marital efforts and Merrill's years of work in the family business, particularly in improving value of the Beachcrest property. Having valued Dennis's marital interest in Aspinquid at $625,000, and taking into account the overall distribution of assets between the parties, the court directed him to make an equitable payment to Merrill of $408,000. If the evidentiary record supports the values arrived at by the court, we will not disturb the court's distribution of the marital assets.

[¶ 34] Dennis's primary argument in the divorce appeal is that the court's determinations of value lack evidentiary support in the record. He argues that the court (1) erred in finding that Dennis obtained Aspinquid stock in 1986; (2) should not have included the appreciation in value of the marital estate because there were no

capital improvements and market forces were primarily responsible for the appreciation; and (3) erred in making inconsistent findings that the total increase in value of Aspinquid was $625,000 and that the *marital* increase in value for Dennis's shares was $625,000.

[¶ 35] We review a divorce court's factual findings for clear error to determine whether the findings are supported by competent evidence in the record. *See Gutierrez v. Gutierrez*, 2007 ME 59, ¶ 13, 921 A.2d 153, 157; *Hedges v. Pitcher*, 2008 ME 55, ¶ 20, 942 A.2d 1217, 1223. Whether property is marital or nonmarital is a question of fact reviewed for clear error. *Ahern v. Ahern*, 2008 ME 1, 5, 938 A.2d 35, 37.

[¶ 36] Evidence in the record supports the court's findings that Dennis owned stock in 1986 when he and Merrill purchased Beachcrest. At that time, Dennis reported to the bank through which he was financing the Beachcrest purchase that he was a 25% stockholder in Aspinquid. The court was not required to believe Dennis's protestation at trial that he did not own stock at that time. *See Kapler v. Kapler*, 2000 ME 131, ¶ 9, 755 A.2d 502, 507 ("The District Court is not bound to accept any evidence as fact and must determine the weight and credibility of all the evidence.").

[¶ 37] The record also supports the court's findings that the parties mistakenly believed that they would at some future point be in a position to purchase Beachcrest back from Aspinquid, and that Dennis ultimately realized benefits from Beachcrest both because the property became an asset of a company in which he held a substantial ownership interest and because the property produced income for that company. Given the competing theories of the extent and causes of Aspinquid's increase in value during the marriage, the court's determination of a $625,000 marital interest in Aspinquid is not without support in the record.[4]

[¶ 38] Additionally, although there is some confusion in the court's numbers, the court did eventually determine that Dennis had a *nonmarital* interest in Aspinquid and the family limited partnership worth $900,000 to $1,000,000, and it is evident from the judgment as a whole that the court found a separate *marital* interest worth $625,000.[5] The court did not err in

---

4. Collectively, the parties called no fewer than five experts to testify about the financial affairs of Aspinquid. This is in addition to their submission of multiple real estate appraisals of Aspinquid's holdings, including Beachcrest. The highest estimate of the increase in value of Dennis's holdings was $884,400—an amount greater than the $625,000 increase in value that the court deemed to be his marital interest in Aspinquid. The court accepted a $3,000,000 appraisal of Aspinquid's primary real estate asset, the Aspinquid Motel. The court also accepted an appraisal of Beachcrest of $1,250,000. It is not unreasonable, given these real estate figures alone, for the court to have found that, in addition to Dennis's $625,000 marital interest in Aspinquid, he had a nonmarital interest worth $900,000 to $1,000,000 through his direct ownership of Aspinquid stock and through his ownership

interest in the Lily Andrews Limited Partnership.

5. Although the court stated in its summary of factual findings that the "marital/non-marital portion of the Aspinquid" was valued at $625,000, it also stated in that summary that Dennis would retain approximately $1,000,000 worth of *nonmarital* property as a minority stockholder in Aspinquid. Although these statements suggest an ambiguity, the judgment itself conveys the court's meaning clearly:

> The Court finds that the equity interest of Dennis in shares of Aspinquid stock held by the [Lily Andrews Family Limited] Partnership, combined with the 26.5% shareholder interest owned directly by Dennis, is partially his non-marital property and partially marital property and that the marital com-

awarding Merrill an equitable payment explicitly designed to award her, among other things, "one-half the value of the increase in the Beachcrest Property." By doing so, the court implicitly found that, although Dennis may not have had a substantial active role in Aspinquid generally, he did have a substantial active role in bringing Beachcrest into Aspinquid's holdings and running it as a family business with Merrill during the marriage. *See* 19–A M.R.S. § 953(2)(A), (E) (2007). Thus, the efforts of Dennis and Merrill increased the value of the corporate interests held by Dennis. Because the record supports the court's findings regarding Dennis's and Merrill's marital efforts related to Beachcrest, the court did not err in finding that Dennis had a $625,000 marital interest in Aspinquid through his direct stock ownership and through his ownership interest in the Lily Andrews Family Limited Partnership.

### 2. Distribution of Marital Property and Allocation of Marital Debt

[¶ 39] Both parties challenge the court's distribution of the marital property, and Dennis challenges the allocation of the marital debt. Dennis argues that the court erred in accepting a valuation of Aspinquid that included Dennis's debt to Aspinquid as an asset of the corporation, but then finding it did not count as a debt for Dennis because he was not paying it off.

[¶ 40] Merrill argues that the court should have considered Dennis's vast nonmarital assets in determining an equitable distribution. She also argues that the court should have taken into account her labor performed at Aspinquid for little or no compensation, the parties' contributions of their real property to Aspinquid, and

their investment of assets in Aspinquid for tax purposes.

[¶ 41] We review a divorce court's overall distribution of property for an abuse of discretion. *Grenier v. Grenier*, 2006 ME 99, ¶ 10, 904 A.2d 403, 406. We review a divorce court's factual findings regarding whether property or debt is marital for clear error to determine whether the findings are supported by competent evidence in the record. *See Ahern*, 2008 ME 1, ¶ 5, 938 A.2d at 37; *Hedges*, 2008 ME 55, ¶ 20, 942 A.2d at 1223.

[¶ 42] In a divorce proceeding, the court must set aside to each party his or her nonmarital property and must also divide the marital property in just proportions between the parties. 19–A M.R.S. § 953(1) (2007). By statute, a divorce court must divide marital property and address the parties' debts as follows:

**Disposition.** In a proceeding for a divorce, for legal separation or for disposition of property following dissolution of the marriage by a court that lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors, including:

A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

B. The value of the property set apart to each spouse; and

C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in

ponent thereof has a fair market value of $625,000.

the home for reasonable periods to the spouse having custody of the children.

*Id.*

■ [¶ 43] Regarding the factual findings, because the court found that there was little evidence that Dennis had made any payments whatsoever on his loans from Aspinquid or that he had any intention to do so, the court did not err in declining to set off those debts against the value of Dennis's marital property. Because the debts remain on the Aspinquid books, however, we cannot say that the court erred in finding, based on expert evidence, that they were assets of the corporation.

[¶ 44] Although Merrill argues that the court failed to take into account labor that she and Dennis performed at Aspinquid and their investment of marital property in the corporation, it is evident from the court's judgment that it did consider these factors. Further, the court recognized Dennis's access to nonmarital assets and made express findings about the value of those assets. The court fashioned a fair and just award in a case where the evidence was conflicting and often confusing. It did not abuse its discretion in its overall distribution of the marital property.

3. Order that Dennis Pay $408,500 to Merrill Within Ninety Days

■ [¶ 45] Dennis argues that the only assets available to him to raise the $408,500 are his real estate equity of roughly $127,500 and his boat worth $65,000. He argues that he does not control Aspinquid or the family's limited partnership, which holds Aspinquid stock, and has debts of over $800,000.

[¶ 46] Because evidence in the record demonstrates that Dennis has been able to obtain large loans in the past, whether from banks or from Aspinquid, the court did not err in finding that Dennis would be able to raise the sums necessary to pay Merrill the equitable payment. *See Gutierrez*, 2007 ME 59, ¶ 13, 921 A.2d at 157; *Hedges*, 2008 ME 55, ¶ 20, 942 A.2d at 1223; *see Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923, 929.

4. Earning Capacities

[¶ 47] The court found that Merrill's annual income is $15,000 and Dennis's is $116,000. Dennis contends that the court erred in finding that Merrill's earning capacity was only $15,000 per year because she has undergraduate and graduate degrees, she earned more than $14,000 twenty years ago working as a department store manager, and she is near to having her teaching certificate, which will enable her to achieve a $35,000 annual income.

[¶ 48] We review a divorce court's factual findings regarding a party's income for clear error. *Brown v. Brown*, 2007 ME 89, ¶ 11, 929 A.2d 476, 480.

[¶ 49] The court determined Merrill's current earning capacity and considered that her earning potential would soon increase. Accordingly, the court decreased the amount of spousal support beginning on September 1, 2008. As for the court's determination of child support based on its findings of the parties' earning capacities, if Merrill's income changes substantially, Dennis will have the opportunity to move to modify that judgment pursuant to 19–A M.R.S. § 2009 (2007). It was not error for the court to enter the child support order based on the parties' current earning capacities. *See Arey v. Arey*, 651 A.2d 351, 355 (Me.1994).

5. Spousal Support

[¶ 50] Based on its findings that Merrill's annual income is $15,000 and Dennis's is $116,000, the court awarded Merrill

spousal support of $1,750 per month from December 22, 2006, through August 31, 2008, after which she would receive $1,000 per month until child support payments cease, at which point spousal support would increase to $1,600 per month. The court identified events that would cause spousal support to cease and stated that its goal was for Merrill to receive fifty-five percent of the parties' net income because Dennis had intentionally allowed the performance of his business, American Propulsion Systems, to lag; he had a substantial nonmarital interest in Aspinquid; and "there [was] no evidence on the record that would prohibit Dennis from living at Beachcrest and thereby eliminating his rental or mortgage expense." The increase following the termination of child support was intended to recognize that certain child support goes to fixed expenses such as housing, which will still need to be paid after the child leaves home.

[¶ 51] Dennis argues that the court's factual findings were erroneous, that the court abused its discretion in entering the spousal support award, and that the court failed to apply the spousal support factors contained in the divorce statute properly. *See* 19–A M.R.S. § 951–A(5) (2007). Merrill argues that the court's award of spousal support was inadequate.

[¶ 52] We review a divorce court's factual findings for clear error to determine whether the findings are supported by competent evidence in the record. *Gutierrez*, 2007 ME 59, ¶ 13, 921 A.2d at 157; *Hedges*, 2008 ME 55, ¶ 20, 942 A.2d at 1223. The question whether the court properly applied the spousal support statute is a question of law, which we review de novo. *See Dowling v. Salewski*, 2007 ME 78, ¶ 10, 926 A.2d 193, 196. We review a court's ultimate determination of spousal support for an abuse of discretion.

*Potter v. Potter*, 2007 ME 95, ¶ 6, 926 A.2d 1193, 1195.

[¶ 53] Regarding Dennis's challenge to the court's factual findings, there was evidence that Dennis was not entering into contracts in his own business because of the divorce, that Dennis had lived in Aspinquid-owned property until soon before trial without paying rent, and that the parties' daughter is a good student who is going to graduate from high school and is college-bound. Accordingly, the court's factual findings on these matters relevant to spousal support are not clearly erroneous. The court was not required to make findings regarding the income potential associated with investing the $408,500 equitable payment that the court ordered Dennis to pay Merrill. There is nothing in the record to suggest that all of that would be invested; rather, there is abundant evidence that Merrill owes money to her attorneys and a family friend, that she has expenses greater than her current salary will cover, and that she plans to purchase a home.

[¶ 54] Regarding the challenge to the court's application of the spousal support statute, we observe that, although the court used a worksheet that was prepared by an accountant to summarize the parties' relative incomes and expenses, the court's ultimate award of spousal support differs from the amount arrived at on that worksheet. As the court stated, it used the worksheet to determine the parties' income differential, but it then applied the statutory factors to determine its ultimate award. The court did not err in doing so.

[¶ 55] Regarding Merrill's argument that she should have received a greater award of spousal support, we discern no abuse of discretion in the court's award. The court's overall award of spousal support is equitable and was based on a thorough review of the parties' full economic

circumstances, including Dennis's history of processing personal expenses through the family corporation and his access to substantial nonmarital assets.

### 6. Life Insurance

[¶ 56]  The court ordered Dennis to obtain a term life insurance policy in the amount of $325,000 with Merrill as the sole beneficiary within thirty days of the entry of judgment "to secure the payment of the court ordered alimony and child support." Dennis contends that the court cannot order him to purchase new insurance for Merrill's benefit.  He argues that there is no evidence in the record regarding the availability or cost of insuring his life and that it was Merrill's burden to provide such evidence.

[¶ 57]  We review a divorce court's factual findings for clear error to determine whether the findings are supported by competent evidence in the record.  *Gutierrez,* 2007 ME 59, ¶ 13, 921 A.2d at 157; *Hedges,* 2008 ME 55, ¶ 20, 942 A.2d at 1223.  We review a court's interpretation or application of a statute de novo as a question of law.  *See Dowling,* 2007 ME 78, ¶ 10, 926 A.2d at 196.

■ [¶ 58]  The spousal support statute states that "[t]he court may . . . order the obligated party to maintain life insurance or to otherwise provide security for the payment of spousal support in the event the obligation may survive the obligated party's death."  19–A M.R.S. § 951–A(7) (2007).  Nothing in the statute requires the insurance to have been preexisting.  Given Dennis's substantial income and assets, and absent any evidence that Dennis has any health problems or other limitations, the court did not err in finding that he could obtain life insurance that he can afford.  *See Bryant v. Bryant,* 411 A.2d 391, 395 (Me.1980).  Although the court did look outside the record to estimate the cost of the insurance, any error in doing so was harmless and will be disregarded.  *See* M.R. Civ. P. 61.

### 7. Start Date for Child Support Payments

[¶ 59]  Dennis argues that the court erred in entering a new child support order effective December 8, 2006, but vacating the prior order effective December 21, 2006.  Merrill argues that the new child support payment rate should be interpreted to have taken effect on December 21, 2006, not December 8.

■ [¶ 60]  We review a trial court's award of child support to determine whether the court exceeded its discretion in fashioning the award.  *Foley v. Ziegler,* 2007 ME 127, ¶ 8, 931 A.2d 498, 500.  We review any factual findings made in calculating child support for clear error and will uphold the findings if there is any competent evidence in the record to support them.  *Id.*

[¶ 61]  In its divorce judgment, the court incorporated by reference a child support order directing that payments pursuant to the divorce judgment begin on December 8, 2006.  The judgment stated, however, that the prior child support order would be vacated effective December 21, 2006.  Upon Dennis's motion for findings of fact and conclusions of law, the court amended its judgment, purporting to have entered a child support order "of even date."

[¶ 62]  Although such an order might have made the payment start date consistent with the December 21, 2006, date of expiration of the prior order, the court did not actually sign an amended child support order when it entered the amended judgment.  Thus, although the court may have intended to enter an amended child support order to supersede the earlier order,

see *Longo v. Goodwin*, 2001 ME 153, ¶ 12, 783 A.2d 159, 162, the only child support order that was signed and docketed provides that payments begin on December 8, 2006. We therefore vacate the child support order for the narrow purpose of adjusting the start date to December 21, 2006, the date on which the prior child support order was vacated.

### 8. Indemnification Provision

[¶ 63] Dennis argues that the indemnification provision of the court's order should be vacated because it was not part of the court's initial ruling from the bench, it is vague and ambiguous, the divorce court lacks jurisdiction to require a party to indemnify another with regard to claims of third parties, and other provisions of the judgment adequately protect the parties on matters directly related to the divorce.

[¶ 64] We review de novo whether a court has legal authority to take the action it has taken. *See Desjardins v. Desjardins*, 2005 ME 77, ¶ 5, 876 A.2d 26, 28. Dennis's first argument, that the indemnification provision was not included in the court's oral judgment, is wholly without merit. The court retains the authority to augment, amend, and clarify any aspect of an orally presented judgment through the issuance of the final written judgment. *See Roberts v. Roberts*, 2007 ME 109, ¶ 7, 928 A.2d 776, 779. The court had the authority to include the indemnification provision in its final written judgment, and it did not abuse its discretion in doing so. *See Ramsdell v. Ramsdell*, 1997 ME 14, ¶ 8, 688 A.2d 918, 921.

[¶ 65] The court directed each party to hold the other harmless from liabilities for which that other party is not liable pursuant to the terms of the divorce judgment. Although Merrill asked the court to require Dennis to indemnify her against the costs of other actions, the court

did not do so in its judgment. The court acted within its authority in entering the indemnification provision applicable to the allocation of debts set forth in the divorce judgment itself. *Cf. Torrey v. Torrey*, 415 A.2d 1092, 1094–95 (Me.1980).

### 9. Attorney Fees

[¶ 66] We review a court's decision regarding attorney fees for an abuse of discretion. *Brown v. Habrle*, 2008 ME 17, 18, 940 A.2d 1091, 1096. The court may award fees based on the parties' relative abilities to pay and the award's fairness given the totality of the circumstances. *Id.*

[¶ 67] Given the extensive, contentious litigation between the parties resulting in a five-day trial, and the court's findings regarding the conduct of the attorneys and the parties in this matter, well supported in the record, the court did not abuse its discretion in leaving both parties to pay their own attorney fees.

### 10. Retention of Jurisdiction

[¶ 68] Both parties contend that the court lacks the authority to consider any reallocation of assets based on the outcome of other litigation because this would be an impermissible attempt to allocate assets based on future events. Because the other pieces of litigation have been resolved by our opinion today, that portion of the divorce judgment by which the court retained jurisdiction will not apply, and the issue of its validity is moot. *See Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 6, 802 A.2d 994, 996 (stating that an appeal is moot if the passage of time and occurrence of events have deprived the litigant of an ongoing stake in the controversy).

## II. CONCLUSIONS

[¶ 69]  We first affirm both the denial of Aspinquid's motion for leave to amend its answer to include counterclaims and the entry of summary judgment against Merrill on each count of Merrill's quiet title action.  Second, we vacate the denial of Merrill's motion to dismiss Aspinquid's trespass, wrongful interference/private nuisance, and slander of title claims against her, and we vacate the order of attachment and trustee process entered in that action.  Finally, we correct the child support order entered in the divorce judgment to provide that child support payments begin on December 21, 2006, and in all other respects affirm the divorce judgment.

The entry is:

Regarding Docket No. Yor–06–632, summary judgment and denial of motion for leave to amend answer in quiet title action affirmed.

Regarding Docket No. Yor–07–46, denial of motion to dismiss trespass and related claims, and order of attachment and trustee process vacated.  Remanded for dismissal of all claims.

Regarding Docket No. Yor–07–240, divorce judgment affirmed, except that the child support order is remanded for the court to correct the order to provide a start date for payments of December 21, 2006.