2007 ME 127

**Catherine I. (Ziegler) FOLEY**

v.

**Gary L. ZIEGLER.**

Supreme Judicial Court of Maine.

Submitted On briefs: May 17, 2007.

Decided: Sept. 4, 2007.

Gary L. Zeigler, Kittery Point, for appellant.

Appellee did not file a brief.

Panel: SAUFLEY, C.J., and CLIFFORD, CALKINS, LEVY, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶ 1] Gary L. Ziegler appeals from a judgment entered in the District Court (York, *Kennedy, D., J.*) following a remand from this Court, in which the District Court modified Ziegler's 2001 divorce judgment as to Catherine I. (Ziegler) Foley. Ziegler contends that the District Court erred when it recalculated Ziegler's child support obligations for the parties' two children. We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] Catherine I. Foley and Gary L. Ziegler were married on December 28, 1989. They have two minor children, a son and a daughter. In October of 2000, Foley instituted divorce proceedings in the District Court on the ground of irreconcilable differences. Ziegler counterclaimed for divorce on the same ground. The court (*Janelle, J.*) issued a divorce judgment in June of 2001, ordering, among other provisions, shared parental rights and responsibilities of the children with primary residence of the children with Foley, and child support due from Ziegler to Foley in the amount of $225.72 per week. We affirmed the divorce judgment in a memorandum of decision. *Ziegler v. Ziegler*, Mem–02–19 (Feb. 12, 2002).

[¶ 3] In 2002, both parties moved to modify the court's divorce judgment, Foley seeking sole parental rights of both children, and Ziegler requesting primary residence of both children, an award of child support, and a determination that he had overpaid child support. The court entered an interim order dated May 14, 2004, suspending all child support payments until the pending motions to modify were decided.

[¶ 4] Following a hearing, in September of 2004, the court (*Brodrick, A.R.J.*) entered an order in which it: altered the parenting schedule as to the daughter and awarded Foley continued primary residence of the daughter; awarded primary residence of the son to Ziegler; found that the son had been in Ziegler's de facto primary care since May 30, 2003; and awarded Ziegler child support overpayment arrearages of $3560 for the amount Ziegler paid Foley while the son was residing primarily with Ziegler.

[¶ 5] On Ziegler's subsequent motion to reconsider, the court ordered that the portion of Ziegler's motion challenging the court's child support calculations be referred to a family law magistrate for decision. Pursuant to that referral, and over Ziegler's objection, the magistrate (*Stavros, M.*) issued a child support order calculating an increased amount of $5133 in

child support overpayment arrearage due to Ziegler, and a decreased amount of $127.20 per week in child support due to Foley.

[¶ 6] Following Ziegler's appeal, we vacated that portion of the District Court's judgment referring the child support calculations to the magistrate for decision on the ground that the court lacked authority to refer a matter to a magistrate when other contested issues existed between the parties pursuant to 4 M.R.S. § 183(1)(D)(4) (2006).[1] *Foley v. Ziegler (Foley I),* 2005 ME 117, ¶¶ 12, 13, 887 A.2d 36, 38–39. We remanded the matter to the District Court for the court to act on the child support issues raised in Ziegler's motion for reconsideration, but we affirmed the District Court's decision in all other respects. *Id.* ¶ 13, 887 A.2d at 38–39.

[¶ 7] Following remand, by order dated October 16, 2006, the court (*Kennedy, D., J.*) again recalculated Ziegler's child support overpayment arrearage award, concluding that Foley owed Ziegler $5391.14. Ziegler then filed this appeal.

## II. DISCUSSION

 [¶ 8] The sole issue now before us is whether the court correctly calculated the parties' child support obligations in its October 16, 2006, order entered after remand. We review a trial court's award of child support to determine whether the court exceeded its discretion in fashioning the award. *Lawrence v. Webber,* 2006 ME 36, ¶ 6, 894 A.2d 480, 483. The court's factual findings in calculating child support are reviewed for clear error, and we will not disturb such findings if there is any competent evidence in the record to sup-

port them. *Wrenn v. Lewis,* 2003 ME 29, ¶ 13, 818 A.2d 1005, 1009.

[¶ 9] Child support is awarded pursuant to the child support guidelines found in 19–A M.R.S. §§ 2001–2011 (2006). The statute contains a rebuttable presumption that the "parental support obligation derived from the support guidelines is the amount ordered to be paid." 19–A M.R.S. § 2005. The support guidelines require the court to complete the following analysis in calculating child support obligations of parents. The court must first determine both parties' annual gross incomes, which are added together to yield the combined annual income; the court then applies that combined annual income to the Child Support Table to determine the "basic support entitlement," which is the dollar amount of child support due per child, per week. 19–A M.R.S. § 2006(1); 17 C.M.R. 10 144 351–15 to –19 (2002). The basic support entitlement provided for in the Child Support Table depends both on the number and the ages of children for whom support is being calculated. 19–A M.R.S. § 2011; 17 C.M.R. 10 144 351–15 to –19 (2002). After calculating the basic support entitlement, the court must then add to that amount the weekly cost of child care and health care for the child. 19–A M.R.S. § 2006(3). This total number, called the "total basic support obligation," is intended to represent the weekly financial cost of caring for the child. 19–A M.R.S. § 2006(3). To determine the portion of this obligation that each parent must bear, the court divides the total basic support obligation in proportion to the parents' respective incomes; the resulting amount for which the non-primary care provider is responsible is awarded to the parent who

---

**1.** Section 183 provides, in pertinent part, that family law magistrates have jurisdiction to decide "[f]inal orders in a contested proceed-ing when child support is the only contested issue." 4 M.R.S. § 183(1)(D)(4) (2006).

is the primary care provider. 19–A M.R.S. § 2006(3), (4).

[¶ 10] In the present matter, we review the court's calculation of child support for three different discrete periods of time.

## A. Period I (May 30, 2003, to May 18, 2004)

[¶ 11] This period represents the date from which the court found that the son's de facto primary residence changed from Foley's to Ziegler's home, until the date on which the court entered on the docket its interim order suspending all child support payments between the parties. The court found that during this period, the son was primarily residing with Ziegler, but that the parties shared primary residence of the daughter. The court also found that Ziegler's annual income at that time was $78,935, and that Foley earned $33,268 per year as a nurse, with $350 in supplemental income, totaling $33,613 in annual gross income. Finally, the court determined that Foley paid $14.69 for each child in weekly health care costs. Based on these calculations, the court determined that Foley was responsible for $50.31 per week and Ziegler was responsible for $131.48 per week, resulting in a net obligation that Ziegler owed to Foley of $81.17 per week. Because Zeigler had actually been paying Foley $225.72 per week, a $144.55 overpayment for a period of fifty weeks, the court determined that Foley owed Ziegler an overpayment of $7227.50 for Period I.

[¶ 12] We agree with Ziegler that the court's calculations of child support during Period I contain errors that affect the parties' obligations. First, in calculating the basic support entitlement, the court referred to the Child Support Table for two children aged twelve to seventeen. Although the parties' son, born in 1990, did fall within this age range, there is no dispute that their daughter, born in September of 1992, was only ten, and later eleven, years old during Period I. Because the age of the child affects the calculation of the parties' support obligations in the Child Support Table, the court's finding that the daughter was twelve or more years old constitutes clear error, and, on remand, the court should instead refer to the Child Support Table for this period based on the daughter's age being less than twelve years old.[2]

[¶ 13] Finally, Ziegler notes that the court erred in calculating child support based on its finding that the daughter lived in shared residency with both parents, when in fact the daughter lived primarily with Foley during this period. The evidence on this point admitted during the hearing after remand consisted of Ziegler's testimony that from May of 2003 to May of 2004, the daughter was living primarily with Foley, but that after that period, by September of 2004, the daughter's residence was shared by Ziegler and Foley. Foley's own testimony on this point indicated only that the daughter resided primarily with her on the date of the hearing in 2006. The evidence does not support the court's finding that the daughter's residence was shared between May of 2003 and May of 2004, and thus the finding constitutes clear error.

[¶ 14] We therefore remand to the court its judgment as to Period I for recalculation of the parties' child support obligations for the purpose of correcting these three errors, and we affirm the court's

---

2. In addition, in calculating Foley's annual income, a small clerical error was committed. The correct amount is $33,618.

findings and conclusions as to Period I in all other respects.[3]

### B. Period II (May 21, 2004, to September 17, 2004)

■ [¶ 15] Period II represents the time from entry of the court's interim order suspending child support obligations pending disposition of both parties' motions to modify the divorce judgment, until entry of the court's order determining that the son had been living primarily with Ziegler and recalculating child support on that basis. The court determined that Foley was entitled to $1836.36 in child support arrearage for this period ($102.02 per week for eighteen weeks), which was not paid due to the interim order suspending child support payments. The court deducted the $1836.36 Ziegler owed to Foley for period II from the $7227.50 owed to Ziegler based on his overpayment of child support during Period I, resulting in a total overpayment award to Ziegler of $5391.14.

[¶ 16] As to Period II, Ziegler contends that the court erred in determining that *any* child support was owed during Period II at all because the court's interim order suspending all child support was in effect at the time. Ziegler thus challenges the *fact* of the award of child support for Period II, rather than the court's actual method of calculating it.

[¶ 17] In the interim order, the court stated, "Without prejudice, neither party shall have any obligation to pay child support to the other pending further order of court." We disagree with Ziegler that by the use of this language, the court intended to *terminate* altogether his child support obligations during this period. Rather, what the court did was *suspend* for a short time the *payment* of child support, not the *obligation* of child support itself, presumably so that no greater arrearage due to Ziegler would continue to accumulate as a result of the son's move to Ziegler's primary care. Indeed, the termination of child support could not have been accomplished without a hearing and the presentation of new evidence pursuant to 19–A M.R.S. § 2009. Thus, we do not disturb the court's award of child support arrearage to Foley in the amount of $1836.36 for Period II.

### C. Period III (September 17, 2004, to October 30 2004)

■ [¶ 18] This period represents the time of the effective date of the court's order modifying child support until the stipulated date on which the son moved back into Foley's primary care. The court applied the same child support calculations to Period III that it did in Period II.

[¶ 19] Ziegler argues, however, that the court erred in finding that his income during Period III was the same as that in Period II, that is, $87,058 annually.[4] He argues that he earned only $80,500 during Period III. The evidence of Ziegler's income during Period III is his federal income tax return for 2004, which indicates an annual income of $85,745, or $1313 less than the court's calculation of $87,058. Because there is no evidence in the record to support the court's finding that Ziegler earned $87,058 during Period III, we vacate the court's award of child support for this period and remand for the sole purpose of recalculating child support based on Ziegler's income of $85,745, which is supported by evidence in the record. We

---

3. We are not persuaded by Ziegler's final contention of error as to Period I, regarding the cost of dental insurance for the children.

4. Ziegler does not challenge the calculation of his income during Period II, and we do not disturb the court's finding as to Ziegler's income during Period II.

affirm the court's calculations as to Period III in all other respects.

The entry is:

Judgment vacated and remanded for re-calculation of the parties' child support obligations during Period I and Period III consistent with this opinion.[5]

---

**5.** We note that the court need not conduct any further hearings or take any additional evidence to correct its calculations.