**2008 ME 35**

**Charles E. PAYNE**

v.

**Maili PAYNE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 1, 2007.

Decided: Feb. 28, 2008.

Jed J. French, Esq., Evan Smith, Esq., Freeport, ME, for Charles Payne.

Samantha Frank, Student Atty., Deirdre M. Smith, Faculty Supervisor, Cumberland Legal Aid Clinic, Portland, ME, for Maili Payne.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] Charles E. Payne appeals from a divorce judgment entered by the District Court (West Bath, *Field, J.*), following our decision in *Payne v. Payne*, 2006 ME 73, 899 A.2d 793, *Payne I* in which we vacated the original divorce judgment and remanded for further proceedings. As he did in *Payne I*, Charles contends that the District Court erred in determining his income, which in turn led to erroneous determinations of his child support, spousal support, and attorney fee obligations. Charles also contends that the court failed to consider the fact that he retired from the military following *Payne I*, and erroneously found that the statutory presumptions governing the award of general spousal support had been rebutted. We vacate the judgment.

## I. BACKGROUND

[¶ 2] Charles and Maili Payne were married in June 1986, divorced in Texas in May 1990, and remarried in May 1994. They have two daughters, now ages twenty and eleven. In March 2004, Charles filed a complaint for divorce. At trial in October 2004, the parties contested the

issues of child support, spousal support, and attorney fees. The District Court entered judgment, awarding Maili child support, transitional spousal support for one year, general spousal support for the next twenty-seven years, and attorney fees. Following Charles's appeal, we vacated the judgment, finding that the court's calculation of Charles's annual income at $70,000 was clearly erroneous. *Payne I*, 2006 ME 73, ¶ 11, 899 A.2d at 796.

[¶ 3] On remand, Maili requested that the District Court revise its original judgment without further hearing. Nothing in the record indicates that Charles opposed that course of action. Following an initial pretrial conference, Maili submitted a proposed divorce judgment. Charles raised several objections, particularly to Maili's proposal that the court find his imputed income for child support purposes to be $61,679.52 per year. After a final pretrial conference, the court issued its judgment adopting Maili's proposal.

[¶ 4] In the remand judgment, issued in January 2007, the court found that Charles had retired from the U.S. Navy at the end of June 2006, following *Payne I*. It nonetheless imputed to Charles an annual income of $61,679.52 based on his military pay and allowances as they existed at the time of the original trial, plus the cost to Maili of replacing his health benefits. The court ruled that a pending motion to modify an interim support order, which had been entered by a case management officer[1] prior to the vacated original judgment, served as "an effective place holder," and that the effect of Charles's retirement on the court's awards would therefore "be left for further proceedings." The court awarded Maili child support, a $10,000

lump sum payment as transitional and reimbursement spousal support, $1000 per month until she reaches age sixty-five in September 2032 as general spousal support, and $6524 in attorney fees.

[¶ 5] Charles did not move for additional findings pursuant to M.R.Civ.P. 52. He did file a timely notice of appeal.

## II. DISCUSSION

[¶ 6] We review a court's determination of a party's income in a divorce proceeding for clear error. *Payne I*, 2006 ME 73, ¶ 7, 899 A.2d at 795. The determination is clearly erroneous "only if there is no competent evidence in the record to support it." *Id.* (quotation marks omitted). The court's award of child support, spousal support, and attorney fees, which was based largely on its income determination, is reviewed for an abuse of discretion. *Id.*

[¶ 7] In its computation of Charles's income for the purpose of awarding child support, the District Court began with a figure of $50,055.12 per year, representing the total of his Navy base pay plus housing and subsistence allowances while he was on active duty. It then imputed additional income to him in order to arrive at its final result of $61,679.52. Two parts of the court's methodology in imputing income require comment.

### A. Tax Rates

[¶ 8] In calculating its child support award, the court found that Charles paid no state tax on his base pay, and no federal or state taxes on his military allowances.[2] After observing that the child support guidelines factor in an assumption that all income is taxable,[3] the court ad-

---

1. The order was entered prior to the designation of CMOs as family law magistrates.

2. At the time of trial, Charles claimed Florida residency,

3. *See* Maine Department of Health and Hu-

justed Charles's $50,055 annual income by applying a presumed federal tax rate of 20%, and a presumed state tax rate of 6%. As a result, the court imputed to Charles additional income of $7892 from his base pay and allowances.[4]

[¶ 9] The method for calculating a party's child support obligation is prescribed by statute. 19–A M.R.S. §§ 2001–2012 (2007). It requires that:

> After the court or hearing officer determines the annual gross income of both parties, the 2 incomes must be added together to provide a combined annual gross income and applied to the child support table to determine the basic support entitlement for each child.

19–A M.R.S. § 2006(1). Once certain additions are made in order to arrive at a total basic support obligation, that amount is "divided between the parties in proportion to their respective gross incomes." 19–A M.R.S. § 2006(4).

[¶ 10] The term "gross income" is also defined by statute. The portions applicable here provide that:

> **A.** Gross income includes income from an ongoing source, including, but not limited to, salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust funds, annuities, capital gains, social security benefits, disability insurance benefits, prizes, workers' compensation benefits, [certain] spousal support ..., and educational grants, fellowships or subsidies that are available for personal living expenses....
>
> **B.** Gross income includes expense reimbursements or in-kind payments received by a party in the course of employment ... if [they] reduce personal living expenses.

19–A M.R.S. § 2001(5)(A), (B).

[¶ 11] This definition speaks to ongoing cash benefits actually received. *See Dep't of Human Servs. v. Monty,* 1998 ME 11, ¶ 6, 704 A.2d 401, 403 ("The plain language of [the statute] is clear—gross income only includes income from an 'ongoing source.'"). It makes no provision for directly imputing income beyond monies actually received based on a party's tax situation.[5] When the Legislature intended to allow for imputed income to be included in the child support calculation, it said so explicitly. *See* 19–A M.R.S. § 2001(5)(D) ("Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed....").

[¶ 12] A court may consider tax consequences in justifying a deviation from the child support guidelines if one party is

---

man Services, *Maine Child Support Enforcement Manual,* ch. 6 § (2)(C), *available at* http://www.maine.gov/dhhs/OIAS/dser/manual/chapter–6.html (last visited Feb. 1, 2008).

4. In *Payne I,* we noted that "[i]f a court takes judicial notice of any facts in imputing income, it should indicate that it is doing so in its findings." 2006 ME 73, ¶ 11, 899 A.2d at 796. In its remand judgment, the District Court indicated that it was applying presumed tax rates, but it did not explain their origin. Our appellate analysis is hindered when there are insufficient findings in a judg-

ment in support of a court's imputation of income. *Id.* (citing *Williams v. St. Pierre,* 2006 ME 10, ¶¶ 9–10, 889 A.2d 1011, 1013–14).

5. When imputing income to determine spousal support, different considerations apply. Then, a court may consider the overall ability of a party to pay, as well as the party's employment and income potential. 19–A M.R.S. § 951–A(5)(B), (D), (E) (2007); *see Wrenn v. Lewis,* 2003 ME 29, ¶ 18, 818 A.2d 1005, 1010.

awarded a tax benefit, such as the right to claim a child as an exemption. 19–A M.R.S. § 2007(3)(L). It could also deviate from the guidelines if it found that a party's tax situation resulted in the availability of unanticipated financial resources, or that failing to take the tax situation into account would be unjust or not in a child's best interest. 19–A M.R.S. § 2007(3)(E), (Q). Here the judgment after remand stated that the court was awarding the amount recommended by the guidelines, not deviating from them. In those circumstances, a court may not directly impute income to a party based on the party's general tax situation. Accordingly, the District Court's child support award was based on an incorrect calculation of Charles's gross income, and exceeded the limits of its discretion.

B. Cost of Replacement Health Insurance

[¶ 13] In awarding child support to Maili, the trial court found that it would cost her $3732 annually to replace Charles's medical benefits after the divorce, and then imputed that amount to Charles as income. As discussed above, the components of gross income for the purpose of determining child support are established by statute. 19–A M.R.S. § 2001(5). The basic statutory definition speaks to cash benefits received. 19–A M.R.S. § 2001(5)(A), (B).

[¶ 14] There is no evidence that Charles received any cash payment for his military health coverage that would qualify for inclusion as gross income under section 2001(5)(A) or (B). While a court may properly consider "[t]he provisions for ... health insurance benefits of each party" when awarding spousal support,[6] its assignment of income for the purpose of

calculating child support, absent a justifiable deviation from the guidelines, is limited to those amounts set out in section 2001(5). Because the statute does not allow the replacement cost of health insurance for Maili to be imputed as gross income to Charles, the trial court erred in doing so.

## III. FUTURE PROCEEDINGS

[¶ 15] On remand, given the passage of time since the original trial, when coupled with the undisputed change in the financial circumstances of at least one of the parties, the District Court should hold an evidentiary hearing to determine all parties' incomes as they existed before Charles's motion to modify and as they now exist, and then make appropriate findings and awards based on those determinations. A new hearing will serve to bring the original trial record up to date, and will eliminate the uncertainty for both parties as to their rights and responsibilities.

[¶ 16] Because we are vacating the judgment with instructions to hold a new hearing to determine the parties' current circumstances, it is not necessary to address Charles's arguments concerning the court's award of spousal support and attorney fees.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

**6.** 19–A M.R.S. § 951–A(5)(G) (2007).