MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2024 ME 9
Docket:        And-21-131
Argued:        October 5, 2021
Reargued:      April 6, 2022
Decided:       January 25, 2024

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, and CONNORS, JJ., CLIFFORD, A.R.J., and
               HUMPHREY, A.R.J.*
Majority:      STANFILL, C.J., and MEAD and JABAR, JJ., and HUMPHREY, A.R.J.
Dissent:       HORTON and CONNORS, JJ., and CLIFFORD, A.R.J.

DARCY L. HOWARD

v.

PATRICK S. WHITE

STANFILL, C.J.

[¶1]  Patrick S. White appeals from a judgment of the District Court (Lewiston, *Archer, J.*) establishing parental rights and responsibilities as between White and Darcy L. Howard concerning their minor child.  White contends that the court erred by including his employer's cost of providing health insurance to him in his gross income when calculating his child support obligation.  *See* 19-A M.R.S. § 2001(5)(B) (2023).  We agree, and we therefore

---

* Although Justice Gorman participated in this appeal, she resigned before this opinion was certified.  Justice Humphrey sat at both oral arguments and participated in the initial conferences while he was an Associate Justice and, as directed and assigned by the Chief Justice, is now participating in this appeal as an Active Retired Justice.

2

vacate the judgment and remand for further proceedings.[1]

## I. BACKGROUND

[¶2] In December 2019, Howard filed a complaint against White to determine parental rights and responsibilities concerning their child. *See* 19-A M.R.S. § 1653 (2021).[2] On the day of the final hearing on the complaint, the parties resolved all issues by agreement except child support. The court held an evidentiary hearing on that issue only.

[¶3] In a written child support order issued after the hearing, the court stated that White "receives an in-kind benefit from his employer in the form of employer-paid health insurance, the value of which the Court imputes to him as part of his gross income pursuant to 19-A M.R.S. § 2001(5)(B)."[3] For the year 2021, the Court found that White's gross income was $74,929, consisting of wages in the amount of $60,929 and "imputation of employer-paid health

---

[1] White also contends, in the alternative, that when the court calculated his child support obligation it did not fully credit him for the health insurance he provides for the child. Because we conclude that the court erred in calculating his gross income, we do not address this argument.

[2] Title 19-A M.R.S. § 1653 has been amended since the court issued the judgment challenged on appeal, but not in a way that affects the appeal. *See, e.g.*, P.L. 2023, ch. 298, § 2 (effective Oct. 25, 2023) (to be codified at 19-A M.R.S. § 1653(6-D)).

[3] Title 19-A M.R.S. § 2001(5)(B) (2023) provides, "Gross income includes expense reimbursements or in-kind payments received by a party in the course of employment . . . if the expense reimbursements or in-kind payments reduce personal living expenses."

insurance in the amount of $14,000." The court used this gross income amount in its calculation of White's child support obligation.

[¶4] White moved for additional findings of fact and conclusions of law and to alter or amend the judgment, asking the court to find that his employer's contribution toward the cost of his health insurance was not an in-kind payment because he would not receive additional wages were he to decline health insurance coverage. *See* M.R. Civ. P. 52(b), 59(e), 120. The court granted the motion in part, stating,

> [White] receives a generous in-kind benefit from his employer in the form of employer-paid health insurance . . . . This benefit serves to reduce his personal living expenses as it eliminates [his] need to obtain and pay for the full cost of health insurance for himself and for his children. His health, and the health of his family, is important to [him]. . . . In [his answers to Howard's interrogatories, he] acknowledged that health insurance is a part of his living expenses. Those living expenses would be greatly increased if his employer were not providing the valuable fringe benefit to him. As such, the Court imputes the value of that benefit to [White] as part of his gross income pursuant to 19-A M.R.S. § 2001(5)(B).

(Citation omitted.)

[¶5] White timely appealed.

[¶6] After an initial oral argument and before holding a second oral argument, we invited amicus briefs on whether the value of an employer-paid health insurance benefit is included as gross income pursuant to 19-A M.R.S.

§ 2001(5)(B). We specifically solicited a brief from the Department of Health and Human Services as the agency charged with establishing and collecting child support where appropriate. The Department agrees with White and contends that the plain language of section 2001(5)(B) does not support the court's decision to include the cost of White's employer-paid health insurance benefits in his gross income for purposes of calculating child support and that doing so "contradicts the statutory mandate that both parents have a shared responsibility to provide health insurance for their child(ren)."

## II. DISCUSSION

[¶7] We review the court's calculation of White's gross income and its supporting factual findings for clear error, and its award of child support for an abuse of discretion. *McLean v. Robertson*, 2020 ME 15, ¶ 10, 225 A.3d 410; *Petersen v. Van Overbeke*, 2018 ME 104, ¶ 17, 190 A.3d 244. A court's determination of a party's income "is clearly erroneous only if there is no competent evidence in the record to support it." *Payne v. Payne,* 2008 ME 35, ¶ 6, 942 A.2d 713 (quotation marks omitted). Issues of statutory interpretation are questions of law, which we review de novo. *McCarthy v. Guber*, 2023 ME 53, ¶ 10, 300 A.3d 804. As we explained in *Ehret v. Ehret*, "[a]fter the entry of a judgment, if an affected party timely moves for findings pursuant to M.R. Civ. P.

52, the trial court must ensure that the judgment is supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision." 2016 ME 43, ¶ 9, 135 A.3d 101 (footnote omitted).

[¶8] The court's finding that White's annual wage income is $60,929 is supported by the record. The court's finding that the annual cost to White's employer of providing health insurance is $14,000 is also supported by the record. Indeed, neither party argues that these findings are erroneous. The issue is whether the court erred by including in White's gross income, under 19-A M.R.S. § 2001(5)(B), the employer's cost of providing health insurance to White without evidence that the receipt of insurance actually reduced White's personal living expenses. After considering the specific statutory language, the statutory scheme as a whole, our precedent, and decisions from other jurisdictions, we conclude that a court cannot simply infer that the cost to the employer of providing health insurance coverage equals the amount by which the employee's personal living expenses are reduced. Instead, the party seeking the inclusion of an in-kind payment has the burden to prove the amount by which the payment actually reduces the employee's living expenses, if at all. It is the value to the employee, not the cost to the employer, that matters.

6

## A.    Maine's Child Support Statutory Scheme

[¶9]  In Maine, the statutory method for calculating child support takes into account both the obligor parent's ability to pay and the obligee parent's capacity to support the child.  19-A M.R.S. § 2006 (2023); *see* Levy, *Maine Family Law* § 6.5[1] at 6-43 (8th ed. 2013) ("The financial support of a child of divorced parents is the equal responsibility of each parent to be discharged in accordance with each parent's capacity and ability to support the child . . . ."); *cf. Twomey v. Twomey*, 2005 ME 124, ¶ 13, 888 A.2d 272 (tying, in part, the showing of a substantial change in circumstances that may support a downward modification of a child support order to the obligor parent's diminished ability to contribute to the child's financial support); *Absher v. LaCombe*, 432 A.2d 1241, 1242-43 (Me. 1981) (requiring a party seeking an upward modification of a child support order to prove that the obligor parent had "sufficient financial resources to meet the requested increase"); 10-144 C.M.R. ch. 351, ch. 7, § 1(A)-(C) (effective July 6, 2016) (ensuring that, when imputing income based on a parent's voluntary unemployment or underemployment, the amount ordered for support is based on evidence of the obligor's ability to pay).

[¶10] Child support is calculated under an "income share formula." Levy, *Maine Family Law* § 6.5[2][a] at 6-45 (quotation marks omitted). Under this approach, a support figure is "based upon an estimate of the share of each parent's income that would have been allocated to the child if the parents of the child were living in an intact household." *Id.* (quotation marks omitted); *see also* 19-A M.R.S. § 2006(1), (4). Accordingly, although increasing an obligor parent's gross income results in a greater payment to the obligee parent, the same reasoning is applied in calculating the obligee parent's income: an increase to the obligee parent's income results in a lower child support payment by the obligor parent.

[¶11] With that understanding, we turn to the statutory language at issue in this case, which we construe "to give effect to the intent of the Legislature, first by examining its plain language." *Narowetz v. Bd. of Dental Prac.*, 2021 ME 46, ¶ 24, 259 A.3d 771 (quotation marks omitted). "All words in a statute are to be given meaning, and no words are to be treated as surplusage if they can be reasonably construed." *Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262 (quotation marks omitted). "Surplusage occurs when a construction of one provision of a statute renders another provision unnecessary or without meaning or force." *Home Builders Ass'n of Me., Inc. v.*

8

*Town of Eliot*, 2000 ME 82, ¶ 8, 750 A.2d 566.  "We also examine the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Walker v. Walker*, 2005 ME 21, ¶ 11, 868 A.2d 887 (quotation marks omitted).

[¶12]  Title 19-A M.R.S. § 2001(5)(B) provides:

> Gross income includes expense reimbursements or in-kind payments received by a party in the course of employment . . . *if* the expense reimbursements or in-kind payments reduce personal living expenses.

(Emphasis added.)  The statute does not state that all employer-provided fringe benefits received by a parent constitute gross income.  It also does not state that the amounts an employer pays for the parent's benefits are included in the parent's gross income.  Rather, it expressly and unambiguously includes in gross income only "expense reimbursements or in-kind payments" and then only if the employee's personal living expenses are thereby reduced.  *Id.*  This is consistent with the statutory scheme as a whole, as discussed above, because in-kind payments that reduce personal living expenses save the parent money, which then becomes available for support of the child.  *See* 19-A M.R.S. § 2006(1), (4); Levy, *Maine Family Law* § 6.5[1] at 6-43.  To ignore the conditional clause in the second half of the sentence would render that portion of the statute "unnecessary or without meaning or force," *Home Builders Ass'n*

*of Me., Inc.*, 2000 ME 82, ¶ 8, 750 A.2d 566. The statute thus has two related but separate requirements for any amount to be included in gross income: (1) it must be an expense reimbursement or in-kind payment received in the course of employment *and* (2) it must reduce personal living expenses. If both requirements are met, determining the parent's gross income involves still another inquiry: by how much did receipt of the benefit reduce the parent's personal living expenses?

**B.     Review of Prior Maine Decisions**

[¶13]   Although some of our prior decisions have touched on the application of section 2001(5)(B), we have not squarely "address[ed], as a general matter, whether a court may include the amount an employer contributes to an employee's health insurance plan when calculating gross income." *Carolan v. Bell*, 2007 ME 39, ¶ 15, 916 A.2d 945. In *Walker*, we broadly asserted that "[r]eading section 2001(5) in its full context reveals that gross income for the purposes of child support calculations generally includes all payments received by a parent in the scope of employment." 2005 ME 21, ¶ 12, 868 A.2d 887. While that could be read as suggesting that the cost of employer-provided health insurance is to be included in gross income, that was not the issue in the case. Rather, *Walker* presented the question whether a

single lump sum severance payment from a former employer should be included in gross income for the purposes of child support calculations under 19-A M.R.S. § 2001(5)(A), not section 2001(5)(B). *Id*. ¶¶ 9-10.

[¶14] In contrast, in *Payne*, we stated that the definition of gross income reflected in sections 2001(5)(A) and 2001(5)(B) "speaks to ongoing cash benefits actually received" and "makes no provision for directly imputing income beyond monies actually received based on a party's tax situation." 2008 ME 35, ¶ 11, 942 A.2d 713. As with *Walker*, however, we were not addressing whether the amount an employer contributes to an employee's health insurance plan is includable in gross income. *See id.* ¶¶ 8, 12-14. Rather, we held that section 2001(5) did not permit the court to add additional sums to the parent's income because the wages were tax free, nor did it permit the court to impute to the obligor's gross income the cost to the obligee of replacing the insurance she had been receiving as the spouse of the obligor. *Id.*

[¶15] *Carolan*, 2007 ME 39, 916 A.2d 945, was more directly concerned with the inclusion of the value of employer-provided benefits in gross income. There, we stated that section 2001(5)(B) "provided the authority for the court to include the value of Bell's rent-free housing, use of vehicles, and other payments for his living expenses in calculating his gross income, because the

value of these items was received by Bell in lieu of wages in the course of his employment and reduced his personal living expenses." *Id.* ¶ 15. With regard to health insurance, there was specific evidence that Carolan received employer-paid health insurance *in lieu of a wage increase. Id.* ¶ 16. We then affirmed the manner in which the trial court calculated the value of the benefit to be added to Carolan's wages. *Id.* ¶ 17. In affirming the trial court, we expressly determined that "we need not address, as a general matter, whether a court may include the amount an employer contributes to an employee's health insurance plan when calculating gross income." *Id.* ¶ 15.

[¶16] Next in our line of decisions related to this issue was *Young v. Young*, 2009 ME 54, 973 A.2d 765. There, the trial court declined to include the value of the plaintiff's employer-provided health insurance in gross income, concluding that in that case, "it would be unjust to do so." *Id.* ¶ 7. When the defendant challenged the exclusion on appeal, *id.* ¶¶ 9, 15, we addressed a very specific question:

> whether it is within a court's discretion to exclude the value of a parent's employer-provided health insurance benefit in calculating that parent's gross income pursuant to section 2006(5)(E),[4] when the other parent receives a government-subsidized healthcare benefit that is not included in that parent's gross income.

---

4 The statute governs the determination of each party's theoretical child support obligation when each party has primary residence of at least one child involved. 19-A M.R.S. § 2006(5)(E) (2023).

12

*Id.* ¶ 10. We answered that question in the affirmative:

> [A]lthough the court could have added the value of [the plaintiff's] health insurance to her gross income, the court did not have a corresponding value for [the defendant] to add to his gross income.
>
> The court specifically found that it would be unjust to include [the plaintiff's] health benefit in her gross income . . . because it would be unfair to increase [the plaintiff's] income for this benefit when [the defendant] is receiving the same benefit. . . . Given that both [the plaintiff] and [the defendant] receive a healthcare benefit, the court's decision to exclude the value of [the plaintiff's] benefit from her gross income was an appropriate deviation and within the bounds of judicial discretion . . . .

*Id.* ¶¶ 16-17 (citing 19-A M.R.S. § 2007(3)(C) (2008)) (quotation marks omitted).[5] Because the issue was whether the trial court could *exclude* the value of the plaintiff's health insurance from her gross income, *id.* ¶ 15, we had no need to explain the reasoning behind our assumption that the value could also have been *included in* her gross income.

[¶17] Moreover, our suggestion in *Young* that the court has discretion to exclude from gross income the amount by which an in-kind payment actually reduces living expenses is contradicted by our most recent decision in this area.

---

[5] Notwithstanding our language quoted above, the question whether the value of employer-provided health care should be included in gross income is separate from the question whether to deviate, under 19-A M.R.S. § 2007 (2023), from a support order based on the guidelines. According to the statutory scheme, the court should first determine what is included in gross income under section 2001, then calculate support under the guidelines in accordance with section 2006, and only then decide whether "a child support order based on the support guidelines would be inequitable or unjust," 19-A M.R.S. § 2007(1).

In *McLean*, we examined whether the trial court erred in failing to include the value of a parent's various fringe benefits in her gross income when calculating her child support obligation. 2020 ME 15, ¶¶ 1, 3, 9, 225 A.3d 410. The trial record included evidence that the parent's employer "ma[de] her payments on her vehicle loan and pa[id] for fuel for the vehicle, health insurance, and her cell phone, for a total personal benefit to her of $1,590 per month or $19,080 per year." *Id.* ¶ 3. The trial court had not included the value of any of those benefits in its determination of the parent's gross income. *Id.* ¶ 6. We vacated the judgment because despite a motion requesting that the court make additional findings, the judgment "contain[ed] no explanation of how the court determined [the parent's] gross income," and thus we could not assume that the court found facts sufficient to support its determination of gross income. *Id.* ¶¶ 12-14. In doing so, we noted that, in contrast to *Young*, "[i]f a court finds that a party receives . . . in-kind payments from his or her employer and that those . . . payments 'reduce personal living expenses,' the court *must* include the value of those . . . payments in calculating that party's gross income." *Id.* ¶ 10 (emphasis added) (quoting 19-A M.R.S. § 2001(5)(B)). Importantly, we did not distinguish among the various benefits the parent received, some of which

appear to have fallen squarely within the definition of "in-kind payments" that would "reduce personal living expenses," 19-A M.R.S. § 2001(5)(B).

## C.     Out-of-State Authority

[¶18]   Some states explicitly exclude the cost of employer-paid health insurance from gross income for purposes of determining child support. *See, e.g.*, North Carolina Conference of Chief District Judges, *North Carolina Child Support Guidelines* 3 (2023) (excluding "from income . . . amounts that are paid by a parent's employer directly to a third party or entity for health, disability or life insurance or retirement benefits and are not withheld or deducted from the parent's wages, salary or pay"). Other states expressly include the cost or value of employer-paid health insurance. *See Halberg v. Halberg*, 777 N.W.2d 872, 878 (N.D. 2010) (stating that "[e]mployee benefits are gross income for purposes of child support" under North Dakota's administrative definition of gross income); *Bellinger v. Bellinger*, 847 N.Y.S.2d 783, 785 (App. Div. 2007) (concluding that before-tax health insurance deductions were includable in income for child support purposes under a New York statute defining income to include "fringe benefits provided as part of compensation for employment," N.Y. Dom. Rel. Law § 240(1-b)(b)(5)(iv)(C) (McKinney effective Oct. 1, 2007 to Sept. 3, 2008)).

[¶19] More to the point are states that follow the "income share formula" approach to child support and have statutes similar to Maine's.[6] Those states have generally concluded that an employer's cost of health insurance is not includable in gross income. For example, in Alabama, the governing rule provides that "in-kind payments received by a parent in the course of employment . . . shall be counted as income if they are significant and reduce personal-living expenses." Ala. R. Jud. Admin. 32(B)(4). Applying that rule, the Court of Civil Appeals rejected an argument that the $458 per month that an employer paid for a parent's health insurance coverage should be included in the parent's income for child support purposes. *Woods v. Woods*, 851 So. 2d 541, 547 (Ala. Civ. App. 2002); *accord Valentine v. Valentine*, 394 P.3d 129, 131-32 (Idaho Ct. App. 2017) (reaching the same result under a very similar rule and noting that "[g]iven that [health] benefits are common, if it was intended that they be included in income calculations as a fringe benefit, the guidelines would have so specified"); *In re Marriage of Davis*, 252 P.3d 530, 535 (Colo. App. 2011) ("Employer contributions on an employee's behalf to insurance plans are not income for child support purposes.").

---

[6] *See* David Betson et al., *Trade-Offs Implicit in Child-Support Guidelines*, 11 J. Pol'y Analysis & Mgmt., no. 1, 1992, at 6 n.8 (listing the states using the income share formula); James A. McKenna, *Housekeeping Ain't No Joke: How Maine's Child Support Guidelines can be Biased Against Mothers*, 49 Me. L. Rev. 281, 302 n.69 (1997) (same).

[¶20] We are governed by Maine's statutory language, not by other states' court decisions or by public policy. Nonetheless, it is apparent that automatically adding the cost of employer-provided health insurance to either parent's gross income, without determining the amount by which the provision of health insurance actually reduces the parent's personal living expenses, will generally result in a child support obligation that does not align with the parent's available cash resources, contrary to the statutory scheme as a whole.[7] As the North Carolina Court of Appeals stated in addressing the issue,

> contributions made by an employer to an employee's . . . insurance premiums[] may not be included as income for the purposes of the employee's child support obligations unless the trial court, after making the relevant findings, determines that the employer's contributions immediately support the employee in a way that is akin to income. We place particular relevance on a determination concerning whether the employee *may* receive an immediate benefit from the employer's contributions, such that the employee's *present* ability to pay child support is thereby enhanced. For example, if the employee could elect to receive cash

---

[7] Consider the following hypothetical of parents with two young children. Parent One and Parent Two each make $35,685 annually. Parent One's employer contributes $11,350 to the cost of Parent One's health care costs. Using the most recent child support table, if each parent makes $35,685 annually ($71,370 combined), the weekly support obligation would be $168 each, assuming no expenses for childcare, medical insurance for the children, or extraordinary medical expenses. *See* 19-A M.R.S. §§ 2001-2012 (2023); 10-144 C.M.R. ch. 351, ch. 6 (effective Feb. 13, 2023). If the $11,350 cost of health insurance were added to Parent One's income, however, that would increase Parent One's gross income by almost one third, raising Parent One's obligation to $204 weekly and reducing Parent Two's obligation to $154 weekly. *See* 19-A M.R.S. §§ 2001-2012; 10-144 C.M.R. ch. 351, ch. 6. If both parents had the same employer-provided health insurance and $11,350 were therefore added to each parent's gross income, then each would have an obligation of $188 weekly. *See* 19-A M.R.S. §§ 2001-2012; 10-144 C.M.R. ch. 351, ch. 6. For most families, the provision of health insurance does not change the available income. When parents can barely make ends meet, this higher support amount may be impossible to fulfill.

instead of retirement or life insurance contributions from the employer, those employer contributions might properly be considered as income for child support purposes.

*Caskey v. Caskey*, 698 S.E.2d 712, 718 (N.C. Ct. App. 2010) (citation omitted) (construing the relevant child support guideline before it was amended to expressly exclude the cost of employer-paid health insurance from gross income for purposes of child support, *see supra* ¶ 18).  Consistent with the language of section 2001(5)(B), we agree that the critical consideration is the "immediate benefit" to the employee in reducing living expenses, not the cost to the employer.

## D.  The Cost of Employer-provided Health Insurance as an "In-kind payment"

[¶21]  White and the Department both assert that the cost of employer-paid health insurance is not an "in-kind payment" under section 2001(5)(B) because it is not received in lieu of monetary compensation or wages.  *See Carolan*, 2007 ME 39, ¶ 15, 916 A.2d 945 (holding that the value of rent-free housing, use of vehicles, and other payments for a parent's living expenses could be included in gross income where it was received in lieu of wages); *Payne*, 2008 ME 35, ¶ 11, 942 A.2d 713 (stating that the definition of gross income in section 2001(5)(A) and (B) "speaks to ongoing cash benefits actually received").  At least one court has held that employer-provided health

care was not an in-kind payment. *See Woods*, 851 So. 2d at 547 ("[T]he record contains no evidence indicating that [the employer's contribution toward the cost of the parent's health insurance coverage] constitutes an 'expense reimbursement or in-kind payment' to the husband." (quoting Ala. R. Jud. Admin. 32(B)(4))).

[¶22]  An "in-kind payment" is typically in lieu of a direct monetary payment. *See In kind*, Black's Law Dictionary (11th ed. 2019) (defining "in kind" as "[i]n goods or services *rather than money*" (emphasis added)); *Robers v. United States*, 572 U.S. 639, 645 (2014) (citing a federal statute that defines, for purposes of restitution, "in-kind payment" as including "replacement of property" as opposed to periodic payments (quotation marks omitted)); *cf. California State Rest. Ass'n v. Whitlow*, 129 Cal. Rptr. 824, 825, 828 (Cal. Ct. App. 1976) (holding that a restaurant could not require minimum wage employees to accept in-kind meals in lieu of a portion of their monetary compensation).  As White observes, employees usually cannot opt to receive the value of employer-paid health insurance premiums as cash or wages.

[¶23]  In the context of child support, "in-kind payments" that reduce personal living expenses within the meaning of section 2001(5)(B) classically include benefits such as meal reimbursements, free housing, or a company car.

*See* Judiciary Comm. on Child Support Guidelines, *Recommendations on Adoption of Child Support Guidelines* 27 (Sept. 1988); U.S. Dep't of Health & Hum. Servs. Office of Child Support Enf't, *Development of Guidelines for Child Support Orders: Advisory Panel Recommendations and Final Report* II-45 (Sept. 1987); *In re Ankeny*, No. 89-CA-83, 1990 WL 187511, at *2 (Ohio Ct. App. Nov. 19, 1990) (stating that "free military housing is a significant in-kind payment that should be considered as gross income" for purposes of child support, and concluding that a trial court abused its discretion by failing to include in gross income either the value of the housing "or [the] monetary benefits" a parent received "in lieu of" the free housing); *In re L.K.Y.*, 410 P.3d 492, 493-94 (Colo. App. 2013) (affirming a determination that military housing and food allowances were in-kind payments that relieved a parent of living expenses and were includable in income for child support purposes).

[¶24]  The form child support affidavit used in Maine's family cases does not identify the cost of employer-paid health insurance as an "in-kind payment" that reduces living expenses.  *See* State of Maine Judicial Branch, *Form FM-050: Child Support Affidavit,* https://mjbportal.courts.maine.gov/CourtForms/FormsLists/DownloadForm?strFormNumber=FM-050 (last visited Jan. 22, 2024) [https://perma.cc/P3PH-ANB6].  Rather, the form asks the parent to

identify the "[t]otal value of employment benefits you expect to receive this year that reduce your living expenses (car, housing, cell phone, meals, etc.)." *Id.* The form also does not ask the parent to identify all amounts paid by an employer for fringe benefits, presumably because what an employer pays for benefits does not necessarily equate to a dollar-for-dollar increase in income or reduction in the employee's living expenses. *See id.*; *Widman v. Widman*, 619 So. 2d 632, 634 (La. Ct. App. 1993) (holding that a trial court could not include the amount of employer-paid health insurance premiums—as opposed to insurance benefits—in gross income).

[¶25] We also note that unlike most fringe benefits that are taxable as income, *see* 26 U.S.C.A. § 61(a)(1) (Westlaw through Pub. L. No. 118-30); 26 C.F.R. § 1.61-21(a) (2023), neither the federal government nor the State of Maine includes employer contributions to health insurance plans in gross income for income tax purposes, *see* 26 U.S.C.A. § 106(a) (Westlaw through Pub. L. No. 118-30); 26 C.F.R. § 1.106-1(a) (2023); 36 M.R.S. §§ 5102(1-C), 5142 (2023).

[¶26] In short, while all in-kind payments by employers are benefits, it may not be true that all fringe benefits are in-kind payments. If the Legislature intended to include all fringe benefits as gross income, presumably it would

have said so. *See Valentine*, 394 P.3d at 132 (observing that "if it was intended that [health insurance benefits] be included in income calculations as a fringe benefit, the guidelines would have so specified"). Assuming that the receipt of health insurance *may* constitute an in-kind payment, however, the real issue is whether and to what extent it reduces personal living expenses, which it must do in order for it to be included in gross income under section 2001(5)(B).

**E.** **Evidence of the Amount by which the Employer-provided Health Insurance Reduced White's Living Expenses**

[¶27] The party seeking the inclusion of the value of a benefit as gross income has the burden of proof on that issue. *Cf. State v. Armstrong*, 2019 ME 117, ¶ 21, 212 A.3d 856 ("[T]he proponent of the evidence[] had the burden to develop the foundation that would allow the court to admit the evidence."); *Mitchell v. Krieckhaus*, 2017 ME 70, ¶ 17, 158 A.3d 951 (stating, with respect to another issue affecting a child support calculation, that "[t]he party contending that he provides substantially equal care bears the burden of proof on that issue"); *Dickens v. Boddy*, 2015 ME 81, ¶ 12, 119 A.3d 722 (same); 19-A M.R.S. § 2007(2) (2023) ("A party in a court action proposing deviation from the application of the support guidelines shall provide the court with written proposed findings showing that the application of the presumptive amount would be inequitable or unjust."). Specifically, the parties here agree

that Howard—the party seeking to include the value of an employer-provided benefit in White's gross income—had the burden to show (1) that the benefit reduced White's personal living expenses and (2) the amount of money by which White's personal living expenses were reduced. At trial, Howard simply produced evidence of the cost to White's employer of White's health insurance and argued that under section 2001(5)(B), the full amount of the employer's cost is automatically included in White's gross income. White, on the other hand, asserts that Howard failed to prove the amount, if any, by which White's personal living expenses were reduced.

[¶28] We return to the plain language of the statute: "Gross income includes . . . in-kind payments received by a party in the course of employment . . . *if* the . . . in-kind payments reduce personal living expenses." 19-A M.R.S. § 2001(5)(B) (emphasis added). There is no presumption in the statute that employment benefits reduce personal living expenses. To the contrary, the statute plainly recognizes that such benefits may not reduce personal living expenses at all. Thus, the party seeking to include a fringe benefit in gross income must offer proof, beyond the existence of the benefit, that a benefit actually reduces the other parent's personal living expenses and the amount of that reduction.

[¶29]  In its initial decision, the trial court stated that White "receives an in-kind benefit from his employer in the form of employer-paid health insurance, the value of which the Court imputes to him as part of his gross income pursuant to 19-A M.R.S. § 2001(5)(B)."  Upon White's motion for additional findings of fact and conclusions of law and to alter or amend the judgment, the court added that the health insurance benefit "serves to reduce [White's] personal living expenses as it eliminates [his] need to obtain and pay for the full cost of health insurance for himself and for his children."

[¶30]  There is no record evidence, however, supporting the court's finding that the employer-paid health insurance reduced White's living expenses by $14,000 or, indeed, at all.  The trial court stated that White "acknowledged that health insurance is a part of his living expenses" in his answers to interrogatories.  The cited interrogatory asked White to list his monthly living expenses, including health insurance.  White responded that he was contributing $456.30 per month ($5,475.60 annually) out of pocket toward his medical, dental, and vision insurance.[8]  It was Howard, not White, who

---

[8]  The full interrogatory was a typical question concerning out-of-pocket expenses:

> 13.  Describe your estimated living expenses prorated by month, and include in your description, rent, purchase or mortgage payment, utilities, clothing, food, laundry, dry cleaning, transportation (including loans and repairs), medical, dental, optometrical and pharmaceutical care (itemized), education, insurance, including,

24

classified health insurance as a "living expense" and asked what White was paying for health insurance. White appropriately responded by listing what *he* was currently paying, not what *his employer* paid. White's response said nothing about whether he would spend money on health insurance, or in what amount, absent his employer's contributions. Thus, the interrogatory answer could not have supported a finding that the employer-provided health insurance reduced White's living expenses by $14,000.

[¶31] The trial court also found that White's employer-provided benefit "eliminate[d his] need" to purchase a policy and that he would be *required* to obtain health insurance for his child if his employer did not offer that benefit. Maine's child support statute, however, provides that courts must require "private health insurance [to] be provided for the benefit of the child" only if

---

but not limited to, health insurance, recreation, payments on bills or debts owed, taxes other than state or federal income tax.

. . . .

SUPPLEMENTAL ANSWER: Defendant is currently paying approximately $250.00 per month for food, $180.00 per month in transportation expenses, $80.00 per month in automobile insurance, $45.00 per month for his cell phone, *$456.30 for medical, dental and vision insurance,* $434.00 per month for child support for his daughter from a previous marriage, $600.00 per month for child support to Plaintiff, $544.00 per month to Plaintiff for mortgage payment and $250.00 per month on miscellaneous items (clothing, grooming, entertainment, etc.).

(Emphasis added.) It is a bridge too far to conclude from this interrogatory answer that the cost to White's employer of the health insurance reduced White's expenses by $14,000.

such insurance is "available at reasonable cost." 19-A M.R.S. § 2006(8)(H). "Reasonable cost means the cost of private health insurance[9] to the parent responsible for providing medical support that does not exceed amounts adopted by the Department of Health and Human Services in a rule implementing a cost-reasonableness standard." 19-A M.R.S. § 1501(4-C) (2023) (quotation marks omitted). The rules adopted by the Department provide that health insurance is "presumed to be reasonable in cost if the cost to the parent responsible for providing medical support does not exceed 6% of his or her gross income." 10-144 C.M.R. ch. 351, ch. 25, § 1(D) (effective Aug. 9, 2017). By that standard, the most that White could be required to spend for his child's insurance on the open market (if he had no employer-provided benefit) is $3,655.74, six percent of his gross income.[10]

[¶32] The record contains no evidence of the cost to White of an alternative policy and no evidence that a policy was available at a reasonable cost that he could be compelled to spend. Without a policy available at a

---

[9] "Cost of private health insurance means the cost of adding the child to existing coverage or the difference between self-only and family coverage, unless that cost is determined to be unjust by a court or the Department of Health and Human Services." 19-A M.R.S. § 1501(4-C) (2023) (quotation marks omitted); *see also* 19-A M.R.S. § 2006(3)(C) (adopting the same definition in the context of calculating the total basic support obligation).

[10] The court found that absent the $14,000 his employer paid for health insurance, White's gross income is $60,929. Six percent of that amount is $3,655.74. White is already spending more than that out of pocket. *See supra* ¶ 30.

reasonable cost as defined by the Department—a maximum of $3,655.74 annually—White could choose to forgo health insurance and still comply with the support order.[11]

[¶33] Moreover, it is unlikely that health insurance would cost White $14,000 on the open market because he would be eligible for a substantial subsidy under the Affordable Care Act toward the cost of health insurance.[12] *See* CoverME.gov, *2024 Health Plan Comparison Tool for Individuals and Families*, https://me24.checkbookhealth.org/#/ (last visited Jan. 22, 2024) [https://perma.cc/GA9X-CHC8]. This serves to further illustrate that the cost to an employer of providing health insurance cannot stand in for evidence of the amount by which the employee's personal living expenses are thereby reduced.[13]

---

[11] Paragraph 11 of the standard Child Support Order, which was used here, requires a party to "obtain and maintain private health insurance for the benefit of the minor child(ren) if it is presently available at reasonable cost." *See* State of Maine Judicial Branch, *Form FM-132: Child Support Order*, https://mjbportal.courts.maine.gov/CourtForms/FormsLists/DownloadForm?strFormNumber=FF-132 (last visited Jan. 22, 2024) [https://perma.cc/WT85-D37A].

[12] With that subsidy, the cost to him could be about $1,250 per year (for the most basic plan) or as much as around $5,500 per year (for the most comprehensive plan available)—far less than $14,000. *See* CoverME.gov, *2024 Health Plan Comparison Tool for Individuals and Families*, https://me24.checkbookhealth.org/#/ (last visited Jan. 22, 2024) [https://perma.cc/GA9X-CHC8].

[13] This is not to say that no one would ever pay $14,000 out of pocket for health insurance. A higher-income individual with assets to protect may well be willing and able to pay that amount. Many working people in the United States, however, remain uninsured because coverage is not affordable for them. *See* Jennifer Tolbert et al., *Key Facts About the Uninsured Population*, Kaiser Family Foundation (Dec. 18, 2023), https://www.kff.org/uninsured/issue-brief/key-facts-about-

[¶34]  Finally, even if it were appropriate to use the employer's cost as a stand-in for the value of the benefit conferred, adding the employer's entire cost for the health insurance to White's income would fail to account for the portion of the employer-paid health insurance premiums presumably used to cover White's other child.  The court would instead need to determine what portion of the employer's cost goes towards health insurance for White and Howard's mutual child, and then update the child support worksheet and recalculate White's child support obligation accordingly.  *See Foley v. Ziegler*, 2007 ME 127, ¶ 9, 931 A.2d 498; 19-A M.R.S. § 2006(3)(C).  Specifically, the amount attributable to White and Howard's mutual child would be added to the out-of-pocket health insurance cost for the child, and the amount attributable to White's other child would be added to the deduction for "[s]upport paid for other children under a pre-existing obligation."[14]  *See* State of Maine Judicial

---

the-uninsured-population/ (explaining that 73.3 percent of nonelderly uninsured individuals had at least one full-time worker in their family and the most common reason people cited for being uninsured was that coverage is not affordable) [https://perma.cc/S3M4-CB8Q].

[14]  The statutory child support guidelines account for the cost of the parties' mutual child's health insurance in two ways.  First, the court is required to calculate the total basic support obligation for the child—that is, "the weekly financial cost of caring for the child," *Foley v. Ziegler*, 2007 ME 127, ¶ 9, 931 A.2d 498, by adding the weekly cost of the child's health insurance to the basic support entitlement from the child support table, *see* 19-A M.R.S. § 2006(1), (3)(C); 10-144 C.M.R. ch. 351, ch. 6.  Second, the court is required to determine what portion of that total weekly support obligation must be paid by each parent and then deduct the cost of the child's weekly health insurance from the support obligation of the parent who maintains that health insurance.  *See* 19-A M.R.S. § 2006(3)-(4), (8)(C)(5); *Bloom v. Bloom*, 2021 ME 59, ¶ 4, 263 A.3d 491.  In this way, the child support obligation

Branch, *Form FM-040: Child Support Worksheet*, https://mjbportal. courts.maine.gov/CourtForms/FormsLists/DownloadForm?strFormNumber= FM-040 (last visited Jan. 22, 2024) [https://perma.cc/TK9J-94QQ]; *Chiovaro v. Tilton-Chiovaro*, 805 P.2d 575, 578 (Mont. 1991) ("It is reasonable that if a value is assigned to the insurance benefit and added to income, then a value can be assigned to the children's share of the premium and allowed as a deduction.").

[¶35] In sum, a court may include the value of an employer-paid in-kind payment in a parent's gross income only to the extent that the payment actually reduces a parent's personal living expenses. 19-A M.R.S. § 2001(5)(B). Because here there is no record evidence to support the court's finding that White's personal living expenses were reduced by his employer's contributions to his health insurance premiums, we vacate the judgment and remand for the

---

of the parent who maintains the child's health insurance is offset by the full amount that that parent pays for the insurance.

This process should be no different if the court is adding the value of employer-paid health insurance premiums to a parent's gross income. If, in calculating child support, the court adds the amount of the parent's employer-paid health insurance premiums to a parent's gross income and that parent also maintains the child's health insurance coverage through the employer's plan, then whatever portion of the employer-paid premiums that was included as "income" for that parent and goes toward the child's health care coverage must likewise be (1) added to the calculation of the child's weekly support obligation, *see* 19-A M.R.S. § 2006(3)(C), and (2) deducted from the calculation of the parent's portion of that weekly support obligation, *see* 19-A M.R.S. § 2006(4), (8)(C)(5). In the alternative, the court could choose to deduct from its gross income calculation the portion of employer-paid premiums that goes toward the children's health insurance coverage so that only the portion of employer-paid premiums that relates to the parent's own health insurance is added to gross income.

recalculation of White's child support responsibility based on his gross income of $60,929.

### III. CONCLUSION

[¶36] We conclude that (1) an employer's contribution to the cost of an employee's health insurance policy is not necessarily an "in-kind payment" under 19-A M.R.S. § 2001(5)(B); (2) even an employer's contribution that constitutes an in-kind payment does not necessarily reduce the recipient's personal living expenses; and (3) even a contribution that constitutes an in-kind payment and reduces personal living expenses does not necessarily reduce those expenses by the exact cost to the employer of providing the benefit. We also conclude that the record in this case does not support the court's application of section 2001(5)(B) to increase the amount of White's gross income based on his employment-related health insurance benefit.[15] This is not to suggest, however, that the evidence in a particular case could never support a finding that the employee's living expenses were significantly reduced. And generous fringe benefits may, in an appropriate case, result in a deviation from the application of the support guidelines under 19-A M.R.S.

---

[15] Presumably, the Department established the current child support table based on the assumption that the cost of employer-provided health insurance is not automatically included in a parent's gross income. *See* 19-A M.R.S. §§ 2001(5)(B), 2011 (2023).

§ 2007. This issue is far more complex than it appears at first glance, and far more complex than we have previously suggested. It would be helpful if the Legislature more clearly delineated the manner in which such a significant fringe benefit should be treated for purposes of calculating child support obligations.

[¶37] Because the trial court erred by increasing White's income by $14,000 under section 2001(5)(B), we vacate the judgment and remand for recalculation of child support based on White's annual gross income of $60,929.

The entry is:

> Judgment vacated. Remanded for further
> proceedings consistent with this opinion.

------

HORTON, J., with whom CONNORS, J., and CLIFFORD, A.R.J., joins, dissenting.

[¶38] I agree with the Court's conclusion that "a court may include the value of an employer-paid in-kind payment in a parent's gross income only to the extent that the payment actually reduces a parent's personal living expenses. 19-A M.R.S. § 2001(5)(B) [(2023)]." Court's Opinion ¶ 35.

[¶39] However, I respectfully dissent because I disagree with the Court's conclusion that "the party seeking the inclusion of an in-kind payment has the

burden to prove the amount by which the payment actually reduces the employee's living expenses, if at all." Court's Opinion ¶ 8. Because Darcy L. Howard did not present such evidence, the Court's order of remand requires that Patrick S. White's support obligation be based on his income without regard to the effect of the employer's in-kind payment on his living expenses.

[¶40] That allocation of the burden fails to recognize that the parent who receives the in-kind payment is almost always in a much better position than the other parent to prove the effect of receiving the payment on the recipient parent's own living expenses. A more rational allocation of the burden would be to require the recipient parent to prove that the parent's living expenses are reduced by less than the amount of the in-kind payment. While facially neutral, the court's allocation of the burden will often fall on lower-income parents who are less likely to have employer-subsidized health insurance and more likely to be self-represented and unable to meet the burden.[16]

[¶41] Moreover, because we are clarifying our jurisprudence on how a

---

[16] Current Department of Labor statistics indicate that employer-subsidized health insurance coverage in the private sector is available to 95 percent of employees in the top 10% income category but available to only 28 percent of those in the bottom 10% income category. News Release, Bureau of Labor Statistics, Employee Benefits in the United States—March 2023 at 9 (Sept. 21, 2023), https://www.bls.gov/news.release/pdf/ebs2.pdf [https://perma.cc/VL2D-N3L9]. In this case, Howard has no employer-paid health insurance and earns about half of what White does.

parent's receipt of an in-kind payment from an employer can affect child support, we should remand to enable the parties to apply our clarified formulation. In calculating child support, the family courts are not limited to the evidence presented by the parties and may take judicial notice of information outside the record, *see* M.R. Evid. 201, provided the information meets the standards for judicial notice, and the court affords the parties notice and opportunity to be heard. *See Bard v. Lord*, 2010 ME 48, ¶¶ 7-8, 997 A.2d 101 (upholding trial court's sua sponte consideration of Department of Labor statistics); *Wrenn v. Lewis*, 2003 ME 29, ¶ 23 n.4, 818 A.2d 1005; *see also* 19-A M.R.S. § 2004(1)(E) (2023) (permitting the court to admit evidence of Department of Labor statistics).

[¶42] That Howard did not present evidence of the amount by which White's employer's health insurance subsidy reduces White's living expenses should not preclude the court on remand from taking judicial notice of information relevant to that determination. Ironically, the Court's Opinion does what the court on remand will not be allowed to do: take judicial notice of what it would cost White to buy coverage under the Affordable Care Act[17] and also

---

[17] The coverage provided by White's employer-subsidized health insurance plan is likely far closer to the coverage under the Affordable Care Act (ACA) comprehensive plan than the coverage under the basic ACA plan. Between White's contribution of $5,475.60 and the employer's contribution of

what White might have to pay to insure the child alone.[18]   Court's Opinion ¶¶ 31-33.  We should allow the court on remand to do likewise and determine the amount, if any, by which the employer's $14,000 subsidy of White's health insurance coverage reduces his living expenses.

---

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Patrick S. White

Amy Dieterich, Esq. (orally), Skelton Taintor & Abbott, Lewiston, for appellee Darcy L. Howard

Aaron M. Frey, Attorney General, and Alicia M. Cushing, Asst. Atty. Gen. (orally), Office of the Attorney General, Portland, for amicus curiae Department of Health and Human Services

Lewiston District Court docket number FM-2019-676
FOR CLERK REFERENCE ONLY

---

$14,000, the total cost of White's employer-provided insurance coverage is nearly $20,000.  The Court has indicated that the most comprehensive ACA plan would involve a subsidy to White of $4,104 and a cost of $5,500, for a total of $9,604.  Court's Opinion ¶ 33 & n.12; *see* CoverME.gov, *2024 Health Plan Comparison Tool for Individuals and Families*, https://me24.checkbookhealth.org/#/ (last visited Jan. 22, 2024) [https://perma.cc/GA9X-CHC8].

[18]  White pays $12.12 per week, or $630.24 annually for the child's insurance, indicating that, even considering only the child's coverage and not his own coverage, the employer subsidy has reduced his health insurance expense by the difference between $3,655.74, the amount he could and probably would be required to pay to cover the child only, *see* 10-144 C.M.R. ch. 351, ch. 25, § 1(D) (effective Aug. 9, 2017), and the $630.24 that he does pay.